**In re KROLL.**

No. 281.

Municipal Court of Appeals for the
District of Columbia.

June 25, 1945.

John T. Bonner, of Washington, D. C.,
for appellant.

Vernon E. West, Principal Asst. Corp.
Counsel, of Washington, D. C. (Richmond
B. Keech, Corp. Counsel, and Fred J.
Icenhower, Asst. Corp. Counsel, both of
Washington, D. C., on the brief), for ap-
pellee.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

RICHARDSON, Chief Judge.

Leroy Kroll, a sixteen year old minor,
was found by the court to be "habitually
beyond the control of his guardian" and
was ordered "committed to the National
Training School for Boys until twenty-one
years of age." To review this ruling an
appeal is prosecuted.

In an earlier proceeding initiated March
23, 1944, a petition was filed in Juvenile
Court by a school attendance officer, charg-
ing that the boy, then aged fifteen, "is
habitually truant from school." He was
present with his mother at a hearing on
March 29, 1944. Quoting him as "ac-
knowledging the facts" the court ordered
that he "be, and he is hereby, committed
to the Board of Public Welfare."

The Board immediately placed him in
the Industrial Home School.[1] A few
weeks later he developed appendicitis. An
operation was performed at a local hos-
pital and while convalescing he was per-
mitted to remain at the home of his par-
ents.

On May 16, 1944, the parents petitioned
the Juvenile Court to revoke the order of
commitment. This was denied and the
boy returned to the institution. A month
later, without permission, he went home;
his parents returned him to the school.
Shortly thereafter the parents unsuccess-
fully sought to secure his release by habeas
corpus proceedings in the District Court

---

[1] Code 1940, § 32—501.

of the United States for the District of Columbia. He was, however, permitted to remain with his parents for a few days on their promise to return him to the school. To avoid this he left Washington and went to Florida where he lived with an older brother.

In January, 1945, a few days before his sixteenth birthday, the age limit for compulsory school attendance, he returned to his parents' home in Washington. He was employed as an apprentice machinist at the Washington Navy Yard when, on March 7, 1945, he was taken into custody. The present proceeding was then initiated by a petition filed by one Robert S. Leonard, charging that he "is habitually beyond the control of his guardian." At a hearing on March 10, 1945, the foregoing facts were those offered in support of the petition.

The record contains a full transcript of the hearing, including the testimony of the boy and both parents. It shows, and this was not disputed, that except for his truancy and unauthorized departures from the custody of the Board of Public Welfare, his conduct had been good, he was obedient, and had had no trouble with police or neighbors. His parents expressed their urgent desire to retain him at home. He is the youngest of seven children. Three of his older brothers and sisters are in the armed services and three are employed in government bureaus in Washington. No lack of proper home surroundings or failure of the parents to properly supervise the boy were shown, except by such inferences as may be drawn from his truancy and failure to remain in custody of the Board. The father testified that his unwillingness to attend school was due to a nervous condition and that he had been advised by a physician to permit him to remain at home. From the father's testimony it would appear that while "truant" within the purview of the local statute[2] requiring children under sixteen to attend school, his absences were not without the knowledge or consent of his parents.

The boy's explanation of his leaving the Industrial Home School without authority and failure to return was that he was mistreated there by other boys; that his legs were burned by lighted cigarettes; that he was beaten and struck in the stomach and that this had caused the attack of appendicitis; and that he could not report these things to the school authorities for fear of reprisals.

The issue here is whether there was sufficient evidence to support a finding that the boy's welfare or the safety and protection of the public required removal from the home of his parents.

The Board of Public Welfare, in March, 1926,[3] succeeded to the powers of the Board of Children's Guardians, and was authorized "to have the care and legal guardianship of children who may be committed by courts of competent jurisdiction and to make such provision for their care and maintenance, either temporarily or permanently, in private homes or in public or private institutions, as the welfare of the child may require."

In Section 3—116 the classes of children over whom the Board shall have supervision are defined as follows:

"First. All children committed under section 32—209.[4]

"Second. All children who are destitute of suitable homes and adequate means of earning an honest living, all children abandoned by their parents or guardians, all children of habitually drunken or vicious or unfit parents, all children habitually begging on the streets or from door to door, all children kept in vicious or immoral associations, all children known by their language or life to be vicious or incorrigible whenever such children may be committed to the care of the board by the Juvenile Court of the District."

Section 3—106 places under the control of the Board various penal and other institutions of the District of Columbia, including Industrial Home School. The National Training School for Boys is a federal institution, under control of the Attorney General of the United States, charged among other things with the detention and training, until twenty-one years of age, of boys under seventeen convicted of crimes for which the penalty does not extend to life imprisonment.[5]

---

2 Code 1940, § 31—201.

3 Code 1940, § 3—114.

4 Under Section 32—209 the children referred to are those "subjected to cruel treatment, wilful abuse, or neglect, or any child under seventeen years of age found in a house of ill-fame."

5 Huff v. O'Bryant, 74 App.D.C. 19, 121

The Juvenile Court was given jurisdiction over minors under the age of eighteen years, including one:

"(2) Who is habitually beyond the control of his parent, custodian, or guardian; or

"(3) Who is habitually truant from school or home." [6]

In the chapter entitled "Juvenile Court" its "Purpose and basic aims" are defined in Section 11—902, Code 1940. We quote:

"The purpose of this chapter is to secure for each child under its jurisdiction such care and guidance, preferably in his own home, as will serve the child's welfare and the best interests of the state; to conserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot be adequately safe-guarded without such removal; and, when such child is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents."

Sections 11—908 to 918 describe in detail procedure to be followed, and Section 11—915 authorizes the court, if it shall find that a child comes within the provisions of the Code, to proceed by order as follows:

"(1) Place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court shall determine.

"(2) Commit the child to the Board of Public Welfare; or to the National Training School for Girls or the National Training School for Boys if in need of such care as is given in such schools * * *.

"(3) * * * That nothing herein shall be construed as authorizing the removal of the child from the custody of his parents unless his welfare and the safety and protection of the public can not be adequately safeguarded without such removal."

These provisions relating to the Juvenile Court were carefully considered in Re Stuart, 72 App.D.C. 389, 114 F.2d 825, 830. There, quoting from these sections of our statute, it was held that an order removing a child from the custody of his parent could not be sustained without substantial evidence to support a finding that "his welfare and the safety and protection of the public cannot be adequately safeguarded without such removal."

■ The objective of the law is rehabilitation, not punishment. We have quoted extensively from the statutes to emphasize the fact that this objective is manifest throughout all our legislation dealing with juvenile offenders. As to them the same jealous care with which our civil courts seek the welfare of minors[7] has been in large measure substituted by Congress and by state legislatures for penal action. This thought variously expressed is found in many reported opinions.

"The very purpose of this law * * * is to provide for protection and care of juvenile offenders in a humanitarian effort to prevent them from becoming outcasts and criminals, rather than to inflict punishment for their delinquencies." [8]

■■ We find nothing in the record of these proceedings to justify the conclusion that the boy's "welfare and the safety and protection of the public can not be adequately safeguarded" without removing him from his home and parents. He testified that incident to his work he attends school at the Washington Navy Yard and we may take cognizance of the fact that a school is maintained there, where mathematics and other subjects are taught, which apprentice machinists are required to attend.

■ Counsel for appellee argues that the court having acquired jurisdiction by its commitment in the truancy case retains that jurisdiction until the subject is

---

F.2d 890; U.S.C.A. Title 5, § 133t, Plan No. II, Part 1, Sec. 3; Code 1940, § 32—815.

[6] Code 1940, § 11—906.

[7] As recently as June 11, 1945, the United States Court of Appeals for this district, in Boone v. Boone, 150 F.2d 153, a custody case, said: "The question for the

trial court is the welfare of the children. This consideration overrides all others."

[8] Mattingly v. Com., 171 Ky. 222, 188 S.W. 370, 371. See also State ex rel. Berry v. Superior Court, 139 Wash. 1, 245 P. 409, 45 A.L.R. 1530 and annotation; 31 Am.Jur., Juvenile Courts and Offenders, Sec. 22.

twenty-one years of age.[9] Had further orders as to custody been made in that case the argument may have been pertinent, but it completely disregards the fact that the order therein was set aside and that case has been dismissed; that the order here was based on a different charge, was made in a new and independent proceeding, and must find its justification in the record made therein.

We do not minimize the importance of enforcing our truancy laws. Education of the individual is reflected in the standard of intelligence of the citizen body as a whole, an essential element of successful republican government. But when this proceeding was brought the minor was beyond the age of compulsory education. His earlier truancy was past recall or cure. His disobedience to the lawful order of the court formed the basis of the proceeding. Though it was the ill-advised act of a fifteen and one-half year old boy, it should not have been condoned or passed unnoticed. But adults, presumably of mature judgment, may and frequently do show equal disregard for court orders. Usually a moderate fine or brief incarceration serves to remind that such acts may not be committed with impunity.

Will a child's development into a useful law abiding citizen be aided by taking him out of his home, away from respectable interested parents, from good associates and from a useful employment of his own choice, and placing him in a correctional institution where some of his associates, youths of his age or older, may be persons guilty of serious offenses and in some instances perhaps possessed of depraved or known criminal tendencies, and where he will be required to learn a trade for which he may have neither aptitude nor liking? Will respect for law and order be born of the natural resentment engendered by what he may well regard as punishment disproportionate to his offense against the law? As in Re Stuart, supra, the Juvenile Court undoubtedly had jurisdiction under the terms of the statute, but, as in that case, the evidence here is insufficient to justify the severe order which was entered.

Reversed.

---

[9] Code 1940, § 11—907 provides: "When jurisdiction shall have been obtained by the court in the case of any child, such child shall continue under the jurisdiction of the court until he becomes 21 years of age unless discharged prior thereto."