**In re SIPPY.**

No. 1336.

Municipal Court of Appeals for the
District of Columbia.

Argued April 27, 1953.

Decided June 11, 1953.

Rehearing Denied June 26, 1953.

Leonard L. Leimbach, Washington, D. C., for appellant.

Edward A. Beard, Assistant Corporation Counsel, Washington, D. C., with whom Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Camille Sippy reached her eighteenth birthday on February 3, 1953. A little over a month before that birthday her mother, a widow, filed a complaint in the Juvenile Court charging that Camille was habitually beyond the control of the mother. Code 1951, § 11–906(a) (2).[1] After a hearing, and six days before her eighteenth birthday, the court ordered her committed to the Board of Public Welfare "for an indefinite period" to be sent to a school near Philadelphia, where in addition to educational courses she would receive psychiatric treatment. She appeals from the order of commitment. In view of the rulings we are about to make, the evidence need not be recited at this point.

At the outset of the proceedings a gentleman addressed the court and identified himself as a member of the Bar representing the interests of the mother, the complaining petitioner. According to the transcript, "The Court permitted his presence as friend of the Court and directed him to file an appearance for the purpose of the record." The attorney thereupon entered his appearance "for defendant * * at the request of her mother." In view of the fact that appellant had already engaged the services of Mr. Leimbach, who had filed a formal appearance as attorney for defendant two weeks earlier and was then in the courtroom representing his client, we think it was irregular and improper to permit or invite another attorney to enter an appearance for the respondent. It has been held that when a defendant appears by counsel of his own choice the court has no power to assign another attorney to him. People v. Price, 262 N.Y. 410, 187 N.E. 298; see also Commonwealth v. Sendrow, 119 Pa. Super. 603, 181 A. 450. That ruling is directly applicable where, as here, the second attorney was admittedly not in sympathy with the position taken by respondent. We offer no criticism of the attorney, who made the frank statement that he represented the interests of the mother. Those interests were antagonistic or at least sharply opposed to the expressed wishes of the daughter: the mother was urging that the daughter be committed to a psychiatric school, while the daughter was protesting against the necessity or propriety of such commitment.[2] The error was by no means merely procedural and was certainly not harmless.

1. This charge is one of several, enumerated in the same Code section, which may be made against a "child" under the age of 18 years.

2. An assistant corporation counsel who is regularly assigned to serve in the Juvenile Court was present throughout the proceedings but took no part therein and was not asked by the judge to participate.

The prejudicial nature of the ruling is emphasized by the fact that the second attorney was permitted to make a hearsay statement as to a conversation with the girl's personal physician, divulging information of a privileged nature, suggesting "that the court should give great weight to the doctor's recommendation" and "advocating that the court find the child beyond the control of her parent and commit her to the Board of Public Welfare so that she might be placed in the Devereux School." All this, we are satisfied, operated to the prejudice of the respondent, throwing onto the scales against her matters which had no proper place in the proceedings.

Separately assigned as error is a ruling permitting Miss Ryder, an employee of the Social Service Department of the Juvenile Court, to read an ex parte report she had prepared, which contained a resume of her own conversations with respondent's physician and which included privileged matter— specifically an interpretation of the doctor's prognosis and his recommendation that respondent should "enroll" in the Devereux School in Pennsylvania. This report was received over the specific objection of respondent's attorney who protested that his client had never authorized the doctor to divulge ·information concerning her case nor discuss her case or its details with anyone, and that she had been assured by the doctor that he would never disclose information received from her under their confidential relationship. Counsel further objected on the ground that he was being deprived of the right to cross-examine the doctor.

■ All these objections were valid. The statements and conclusions attributed to the physician were hearsay of the plainest sort. Just as plainly it was a violation of respondent's rights under our Code 1951, § 14–308, to receive without her consent information of a confidential nature which the physician had acquired from her in his professional capacity. The Corporation Counsel says, accurately enough, that the

privilege may be waived; and the trial judge held that the mother had in fact waived it. Aside from the fact that the record shows no formal waiver by the mother we are not persuaded that so solemn and important a privilege may be waived by an antagonist in a court proceeding, and such the mother clearly was in this case. We think there is no escaping the conclusion that respondent's statutory right of privilege was improperly invaded.

■ But even if we put aside the question of privilege there still remains the basic fact that respondent's rights were adjudicated and her liberty taken from her on the basis of the alleged professional opinion of a medical man whom her counsel had no opportunity to cross-examine. The doctor was described as a psychiatrist,[3] but there was nothing in the record about his professional status except his name. Respondent had no opportunity to cross-examine him as to his experience or qualifications, as to the nature and extent of his professional contact with respondent, as to the basis for his opinions, or whether commitment for an indefinite period (three years in this case) was the only sound medical solution of the frictions and problems which had arisen between mother and daughter. The error with reference to this matter was compounded when the mother's attorney was permitted to repeat what he said the doctor had told him and, as stated above, to urge the acceptance of the doctor's "recommendation."

■ Appellant also asks us to rule that the trial court committed error in conducting the hearing and deciding the case on the basis of unsworn statements.[4] While no objection seems to have been made at the time, the matter is serious enough to require discussion. The Juvenile Court Act provides that "The court may conduct the hearing in an informal manner," Code 1951, § 11–915, and there are no doubt many cases (such as those involving custody disputes between parents) which may resolve

3. This description without more created unfavorable implications against respondent.

4. The record specifically states that neither the mother nor the daughter was sworn, and the wording of the transcript indicates that the same was true of Miss Ryder and the mother's attorney.

themselves into conciliation hearings and in which unsworn statements may form a proper basis for disposition. But in a case like this where liberty is involved, we think a respondent is entitled to insist that the facts be presented by witnesses who are under the solemnity of an oath. Our Code, dealing with "Evidence in General" provides that "All evidence shall be given under oath according to the forms of the common law * * *." Code 1951, § 14–101. It is true, as we have said, that a proceeding of this nature is statutory and its purpose is "to determine the best interests of the children, and not a criminal or common-law proceeding." [5] But the requirement that evidence shall be given under oath is not limited to any particular proceeding; it applies to all courts. The Juvenile Court is a court of record and is given the power to administer oaths and affirmations. Code 1951, § 11–904. It is clear that the hearing prescribed by statute, though it may be informal, is nevertheless a judicial hearing resulting in a final judgment. Therefore in taking testimony the rule as to swearing of witnesses should apply there as well as in any other judicial proceeding. See, generally, In re Stuart, 72 App.D.C. 389, 114 F.2d 825; In re Kroll, D.C.Mun.App., 43 A.2d 706.

The Corporation Counsel takes an entirely different approach to the situation. His view is that "the minor was not entitled to advance or adopt a position separate from or adverse to that of the parent and society, and that the minor had no vested right to be heard in the proceeding." He also contends that appellant "was then and is now without legal status to prosecute this appeal." He relies on Rule v. Geddes, 1904, 23 App.D.C. 31, in which it was held that "The child herself, having no right to control her own action or to select her own course of life, had no legal right to be heard in these proceedings." [6] That litigation arose fifty years ago under a 1901 statute, at a time when there was no Juvenile Court. A more or less automatic extrajudicial procedure then prevailed under which the Reform School for Girls was authorized to receive into its custody any girl under seventeen on application or complaint of a parent that the girl was "incorrigible or habitually disregards the commands of her father, mother or guardian." Under that procedure there was no court hearing and no judicial order of commitment; the commitment was accomplished by the complaint of the parent followed by an order of the president of the reform school. The basic question discussed in that case was not whether the infant had a right of appeal but whether she was entitled to a hearing before commitment. Far different is the situation today, governed as it is by the comparatively elaborate provisions of the Juvenile Court Act as amended in 1938. Code 1951, § 11–908 prescribes the preliminary procedures under which a child may be brought before the court; and section 11–915 prescribes that a hearing shall be held and spells out the procedures to be followed. Thus we now have a completely new statute and an entirely new and judicial procedure, and the Rule decision is no longer applicable.

If the position taken by the Corporation Counsel were correct then only the parent or guardian of an infant could complain of a failure to follow the prescribed statutory procedures. So that in a case like this where the parent not only consented but instigated the proceedings as complainant and assumed a position hostile to the desires of the child, the child would be left completely without a remedy, and even without the right to be heard, either in the Juvenile Court or on appeal. That such was not the Congressional intent is plain from the Code sections we have cited, and also from the 1942 act creating this court, in which it was provided that "Any party aggrieved by any final order * * * of the Juvenile Court * * * may appeal therefrom as of right to The Municipal Court of Ap-

---

5. In re Lambert, D.C.Mun.App., 86 A.2d 411, 412, affirmed D.C.Cir., 203 F.2d 607.

6. This case was cited in Richardson v. Browning, 57 App.D.C. 186, 18 F.2d 1008, a habeas corpus case involving a child found to be incorrigible.

peals". Code 1951, § 11–772.[7] It is beyond question that this appellant was a party—the real party in interest—and the one most seriously affected by the order of the court below. Hence there can be no doubt that she was a "party aggrieved" by the order of commitment.

The status of an infant and his right to appeal from a judgment of the Juvenile Court have been recognized in this jurisdiction. In re Stuart, 72 App.D.C. 389, 114 F.2d 825, involved a child of fifteen who had been living with her mother and, being found to be without adequate parental care and support, was placed under guardianship of a stranger to the action. The appeal was taken by the child, who was referred to in the appellate opinion as "appellant" and treated and recognized as such, no question as to her right to appeal being raised by the Corporation Counsel or by the appeals court. In this court, In re Kroll, D.C.Mun.App., 43 A.2d 706, we had the case of a fifteen and-a-half year old boy who was brought before the Juvenile Court under the same statute as the one here involved, and found to be habitually beyond the control of his guardian, and committed to the National Training School for Boys. Through his counsel he brought the case here as "appellant." He was so described in both briefs and in our opinion, the Corporation Counsel offering no challenge of his status as appellant. These two cases lend further support to the position taken by appellant in this case.

■ What we have already said disposes of the appeal. But we think we should also discuss appellant's contention that the evidence did not support the charge that she was habitually beyond the control

of her mother. Certain it is that without the incompetent hearsay evidence above-recited there was not enough left to support the charge, and nothing to justify the order removing appellant from her employment and committing her for an indefinite period to a school where psychiatric treatment was to be the principal objective. There was no suggestion that appellant was morally delinquent in a sexual way. It was true, as the appellant admitted, that there had been friction between her and her mother and some disobedience and spiteful conduct on her part (not necessary to be detailed here). But it was also true, as the judge commented, "that the situation probably was not respondent's fault alone, indicating that some responsibility was with the petitioner [mother]." (The mother had been receiving treatment from a psychiatrist of her own.)

We do not think the proof established that appellant was *habitually* beyond the control of her mother. Perhaps the key to the situation is in statements by appellant herself, not denied by her mother, that the mother said she had never been able to evaluate her own problems but was determined that appellant would be required to do so, and that "both she and her mother had strong tempers and wills and that both had difficulty in avoiding clashes." Appellant concluded her statement to the court thus: "She said that she did not want to be put in an institution with unusual or problem children and that she got along well with normal children and people."

We are of the opinion that neither the welfare of the minor nor the safety and protection of the public justified the order entered in this case.

Reversed.

7. This was so prior to 1942 when the party aggrieved had the right to petition the U. S. Court of Appeals for a writ of error.