Matter of Robert McDONALD, Darnell Cooper and Ronald Enrico Dobbins.

No. 2255.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 26, 1959.

Decided Aug. 6, 1959.

---

1 Lewis v. United States, 105 U.S.App.D.C. ——, 263 F.2d 265.

William W. Pavis and Richard W. Barton, Asst. Corporation Counsel, Washington, D. C. with whom Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellant. Albert S. Povich, Asst. Corporation Counsel, also entered an appearance for appellant.

Julius W. Robertson, Washington, D. C., with whom Dovey J. Roundtree and Bruce R. Harrison, Washington, D. C., were on the brief, for appellee McDonald.

Richard W. Tompkins, Washington, D. C., with whom Everett L. Edmond, Washington, D. C., was on the brief, for appellees Cooper and Dobbins.

With leave of court William Dean Embree and Sol Rubin, New York City, filed a brief as *amici curiae* for the National Probation and Parole Ass'n.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Pursuant to Code 1951, § 11–908, a petition was filed in the Juvenile Court alleging that the appellees unlawfully entered a public elementary school and set fires there causing damages in the amount of approximately $20,000. Midway through the hearing and before the Government had completed the presentation of its evidence, the court *sua sponte* dismissed the case when the Government refused to disclose the identity of its informants. The District of Columbia brought this appeal and immediately thereafter appellees filed a motion in this court to dismiss the appeal for lack of jurisdiction. We reserved our ruling on the jurisdictional question until after oral argument on this issue and on the merits. For reasons hereafter shown that motion is denied.

When the court dismissed the case, only three witnesses had testified for the Government. We are primarily concerned for purposes of this appeal with the rulings made during the testimony of the last two, the first of whom was a fire investigator. On direct examination, the witness testified as to statements made by the appellees, who are all minors between the ages of 9 and 10. Counsel objected on the ground that the statements or confessions were involuntary and moved to suppress the evidence. After a brief hearing in which only one of the appellees (McDonald) testified, the motion was denied.[1] Continuing his testimony and basing it substantially on the statements of all of the minors and their re-enactment of the offenses, the fire investigator related in detail how the youths had obtained kerosene from the locked pumps at a gas station, broken into the school, and ignited about thirty fires throughout the first floor of the building.

This witness was followed by a police officer who testified that while investigating a bicycle theft two small children had informed him that a boy named Darnell knew about the school fire. Darnell Cooper, one of the appellees, was brought to the station for questioning and as a result the police learned of the others. On cross-examination, the witness was asked to name the informants. He refused to disclose their identity to counsel, but offered the information to the court. The court then directed the witness to reveal the names or risk a dismissal of the Government's case. After a recess and conference in chambers with the judge, the Government persisted in its refusal and an order dismissing the case was entered. In granting the order, the court stated that the identity of the informants was necessary to the case for two reasons: (1) to determine whether there was probable cause for the arrest of Darnell Cooper; and (2) to determine whether the appellees were unlawfully detained.

Several significant issues are raised by the parties in this appeal: (1) the right of the Government to appeal a ruling of the Juvenile Court; (2) the application of double jeopardy to proceedings in that court; (3) the correctness of the court's order of dismissal; and (4) the applicable rules of evidence governing the admissibility of confessions in the Juvenile Court. But if the issues are multiple, the division of argument is singular. On each of the questions presented, the Government advocates that the rights and procedures applicable to the Juvenile Court are those associated with civil proceedings. Appellees, on the other hand, urge the adoption of rights and procedures which conform to criminal actions. The problem is best approached by a brief re-examination of

1. The necessity of holding such a hearing in a non-jury proceeding is somewhat questionable.

the Juvenile Court Act and the decisions construing it.

## I.

After two unsuccessful efforts, Congress in 1938 enacted for the District of Columbia a new law for the care and protection of delinquent children.[2] The legislation was patterned after the Standard Juvenile Court Act [3] which, at the time of its adoption in the District, had been embodied in its entirety in the law of 20 states and had been substantially incorporated in the statutes of 19 others. The legislation is laudable for it recognizes that the well-being of the state coincides with the welfare of the individual [4] and attempts to set up a judicial body which will inquire into the needs of a wayward minor and provide him with the training, care, and rehabilitation necessary to divert his first steps from what might well be a long path of crime.

The difficulty, as can be expected, comes in making a theoretical concept of individualized justice a workable one. To achieve this and the worthy objectives of the legislation, the Act divorced a proceeding in the Juvenile Court from all of its procedural criminal law characteristics and transformed the hearing into a chancery or civil proceeding.[5] The wisdom and legal aspects of this transformation have received the careful study of the courts on several occasions and in each instance the appellate courts of this jurisdiction have with complete approbation upheld the underlying philosophy of the Act and adhered to the rule that the proceeding is not a criminal action. The most recent statement of the courts is perhaps the most lucid:

"* * * In the event a child commits an offense against the law, the state assumes a position as *parens patriae* and cares for the child. Such a one is not accused of a crime, not tried for a crime, not convicted of a crime, not deemed to be a criminal, not punished as a criminal, and no public record is made of his alleged offense. In effect he is exempt from the criminal law." [6]

And see Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686; In re Lambert, D.C.Mun. App., 86 A.2d 411, affirmed, 92 U.S.App. D.C. 104, 203 F.2d 607; Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905; In re Stuart, 72 App.D.C. 389, 114 F.2d 825; In re Sippy, D.C.Mun.App., 97 A.2d 455; In re Kroll, D.C.Mun.App., 43 A.2d 706.

If the procedural nature of the Juvenile Court has received the close scrutiny of the appellate courts, so too has there been an equal concern for the rights of a minor before that court. With the same precision the courts have said that the rights of a minor in the Juvenile Court stem from three sources: (1) those expressly accorded the individual by the statute itself; [7] (2) those which are so fundamental as to be implied from the Act; [8] and (3) those rights within the meaning of due process insofar as that provision is applicable to civil actions.[9] Specifically, the

---

2. 52 Stat. 596 (1938), as amended, Code 1951, §§ 11–901—11–950.

3. Prepared by the Committee on Standard Juvenile Court Laws of the National Probation Association, New York (1933 revision).

4. S.Rep. No. 530, 75th Cong., 1st Sess. 4 (1937); H.R.Rep. No. 177, 75th Cong., 1st Sess. 3 (1937).

5. Ibid.

6. Chief Judge Prettyman speaking in Pee v. United States, D.C.Cir., —— F.2d ——.

In this connection, see also Larkin v. United States, D.C.Cir., —— F.2d ——, holding that the evidence used against a child in the Juvenile Court and the "social records" of that court shall not be used against him in any case or proceeding in any other court.

7. In re Lambert, supra (the right to jury trial on demand); Code 1951, § 11–915 (Supp. VII).

8. Shioutakon v. United States, supra (the right to counsel and the right to be so advised).

9. Pee v. United States, supra, note 6.

constitutional safeguards peculiar to criminal proceedings do not apply. Pee v. United States, supra.

 Thus, the 1938 Juvenile Court Act did not simply provide for the same kind of a trial as its criminal predecessor did under a new label. It provided for a new informal proceeding with the rights and procedures of civil actions governing. Innocence or guilt are not in issue, but an adjudication of the child's status is. Retribution and punishment are not its purposes, but protection and rehabilitation of the child are. And if the detriments and stigma of a criminal trial do not attach to the juvenile before this court, then it follows that neither does he have the right to be tried as a criminal. With this as a backdrop, we may better examine the specific issues raised here.

## II.

The District of Columbia contends that there is no legal impediment to its right of appeal because the matter is civil in nature. Citing as its authority for judicial review, Code 1951, § 11–772(a), which reads in part:

> "Any party aggrieved by any final order or judgment * * * of the Juvenile Court of the Disrtict of Columbia, may appeal therefrom as of right to The Municipal Court of Appeals for the District of Columbia. * * *",

it urges that the state is a party to a proceeding in the Juvenile Court involving a minor. Opposing this view, appellees point out that the Government's right to appeal is restricted as in a criminal action and that whether the court's rulings were right or wrong, any attempt to again bring appellees to trial will be met by a plea of double jeopardy. Accordingly, they argue that the case is moot and that this court in reversing would be rendering an advisory opinion.[10]

 Considering these contentions inversely, we have prefaced this decision with the general statement that the Juvenile Court Act is not penal in nature and that the constitutional rights granted to persons accused of crime are not available to minors in a juvenile proceeding. Double jeopardy as used both in the Constitution and in its technical sense at common law is applied only to criminal prosecutions.[11] As stated by the Supreme Court, "* * * Unless [the] sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for in criminal prosecutions is not applicable." Helvering v. Mitchell, 303 U.S. 391, 398–399, 58 S.Ct. 630, 633, 82 L.Ed. 917. The courts of six jurisdictions have been confronted with the question of the applicability of double jeopardy to juvenile proceedings. All have rejected it for the reasons we do here. People v. Silverstein, 121 Cal.App.2d 140, 262 P.2d 656; Moquin v. State, 216 Md. 524, 140 A.2d 914; State v. Smith, 75 N.D. 29, 25 N.W.2d 270; In re Santillanes, 47 N.M. 140, 138 P.2d 503; In re Smith, Dom.Rel., 114 N.Y.S.2d 673; Dearing v. State, 151 Tex.Cr.R. 6, 204 S.W.2d 983. In no state to our knowledge has it found acceptance by an appellate body.

 There may, however, be some doubt as to whether a rehearing might be barred under the rule of the Shioutakon case.[12] In that case, without reaching the constitutional question, the court held that a minor has the right to counsel and the correlative right to so be advised on the ground that the statute itself requires

---

10. Support for this view is found in the criminal cases of United States v. Evans, 30 App.D.C. 58, certiorari quashed, 213 U.S. 297, 29 S.Ct. 507, 53 L.Ed. 803 and United States v. Martin, D.C.Mun.App., 81 A.2d 651.

11. 2 Wharton's Criminal Evidence, § 650 (12th ed. 1955).

12. 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686.

that "fair treatment" be accorded a minor in Juvenile Court. The effective assistance of counsel is so basic, the court reasoned, it may be implied from a reading of the Act. We do not think that it was the intention of the court in establishing this rule to use it as a substitute for the specific criminal rights, such as the jeopardy provision, enumerated in the Fifth and Sixth Amendments. Not even the due process provision of the Fifth Amendment has been construed to embrace those specific rights.[13] Nor do we think that the rule of that case was intended to serve as a broad standard by which the courts might adjudicate on a case by case basis the propriety of any and all practices, procedures, and rights urged in the Juvenile Court. Instead, we believe that the rule, while sound, is limited in scope to guarantee those rights or procedures which are so vital to fairness and so strongly implied by the Act, they may be supplied by judicial decision. Even assuming, however, that the Shioutakon rule could be applied to bar a *rehearing in the Juvenile Court,* such a ruling would be inappropriate on the facts we have here where neither side had completely presented its case.

■ In defense of its position, the District advocates that the state is a party to a juvenile proceeding and becomes a "party aggrieved" when a dismissal against it is made to rest on technical error. The state's interest in the welfare of its minors extends in many directions. As illustrative of this, the Supreme Court wrote in Prince v. Massachusetts, 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645:

"The state's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment. A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies. It may secure this against impeding restraints and dangers, within a broad range of selection. * * *"

Some have said that the state's interest in the upbringing of minors is rooted in the common law.[14] But whether the source is grounded in the common law or in legislative enactments much like our own, it is clear that the states have recognized that they have a duty and obligation to see that their children have the opportunity to develop into mature and decent citizens and where parents are unequal to the task of supervising and controlling their children, the state may intervene and exercise its powers as *parens patriae* by providing the necessary care and training.[15] To be sure, the state's intervention is cautious. Under our Act, a thorough investigation is required to determine if the interests of the child and public require action in the court. Code 1951, § 11–908. Commitment to an institution is directed only when the best interests of the child require removal from family ties. Code 1951, § 11–902. Thus, when the state does act, it acts for the child and the community at large. It attempts to provide that which parental authority has denied and it can hardly be said, therefore, that the state is not a party to the action; its

---

13. Hurtado v. State of California, 110 U.S. 516, 534, 4 S.Ct. 111, 120, 28 L.Ed. 232.

14. See, e. g., Annotation and cases cited in 37 L.R.A. 783, 787; 4 Pomeroy's Equity Jurisprudence, §§ 1304, 1307 (5th ed. 1941); In re Holmes, 379 Pa. 599, 109 A.2d 523, fn. 2, certiorari denied, 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757.

15. Excellent discussions of the state's interest as *parens patriae* may be found in the leading cases of: In re Sharp, 15 Idaho, 120, 96 P. 563, 18 L.R.A.,N.S., 886; Farnham v. Pierce, 141 Mass. 203, 6 N.E. 830; Commonwealth v. Fisher, 213 Pa. 48, 62 A. 198; Mill v. Brown, 31 Utah 473, 88 P. 609; Milwaukee Industrial School v. Supervisors of Milwaukee County, 40 Wis. 328.

interest is immediate and one of public concern.[16]

We see no reason why the state should be denied an appeal where it is offended by a ruling of the court. The investigative practices of the Juvenile Court and liberal procedures of that court should, however, act as a general deterrent to appeals by the Government. That the present appeal is the first to our knowledge in the twenty years of the Act's existence is perhaps an attestation by the Government of approval of the Juvenile Court's practices.

### III.

We consider now the correctness of the court's rulings in dismissing the case. It appears that the court rested its order on alternative grounds. It held, as we stated earlier, that it was necessary to know the informants in order to determine: (1) whether probable cause existed for the arrest of Cooper; and (2) whether the appellees were unlawfully detained.

■ We hold that the court was in error on both of its rulings. In the first instance the court was applying a rule of criminal procedure which we hold has no standing in the Juvenile Court. In criminal cases, the identity of an informant may become important in determining probable cause for arrest, but the illegality of an arrest is material only when it is the basis for a motion to suppress evidence.[17] The court had twice ruled on the admissibility of the confessions in this case.[18] As to the second ground, the identity of an informant bears little if any relationship to a determination as to whether there was or was not an unlawful detention.[19]

It does appear, however, that the court was in both instances attempting to rule again on the admissibility of the confessions. Both sides have briefed this issue. Appellees have at some length detailed how the minors were held at the precinct station for several hours and until midnight. We are unable to approve or disapprove of the court's ruling on the admissibility of the statements or confessions because of the present posture of the case. The Government was not permitted to complete its case and the appellees, of course, did not have the opportunity of presenting any evidence. While the court did make an attempt to discover the circumstances under which the statements were obtained, its inquiry was limited to only one of the appellees and the evidence offered by the Government included statements of all three.

■ Because this may be of importance on the rehearing, which we order, we state here for the court's guidance that the admissibility of such statements should not be governed by the strict rules of criminal evidence, but by the rules essentially used in getting at the truth in civil trials.[20]

■ This, of course, means that an adjudication of the status of a minor should rest only on competent and reliable evidence. Where the evidence of the Government consists largely of the statements of the minor, the court is duty bound to

---

16. See People v. Piccolo, 275 Ill. 453, 114 N.E. 145.

17. See United States v. McNeil, D.C.Mun. App., 91 A.2d 849.

18. In addition to the objection and motion filed during the trial, a motion to suppress was filed and denied before the hearing.

19. Conceivably on this ruling, the court was also attempting to apply the Mallory-

McNabb doctrine, [Mallory v. U. S., 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; McNabb v. U. S., 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819], a procedural rule of criminal law which the United States Court of Appeals by strong implication rejected in the Pee case as applying to the Juvenile Court.

20. See Annotation 43 A.L.R.2d 1128, 1138.

thoroughly investigate the circumstances under which the statements were made.

For the foregoing reasons, a new hearing is ordered.

Reversed with instructions to grant a new hearing.