**In the Matter of Raymond Ambrose NICHOLS, Appellant.**

No. 2908.

Municipal Court of Appeals for the District of Columbia.

Argued Feb. 26, 1962.

Decided April 13, 1962.

Curtis P. Mitchell, Washington, D. C., with whom Joyce Capps, Washington, D. C., was on the brief, for appellant.

Richard W. Barton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

MYERS, Associate Judge.

This is an appeal from a Juvenile Court order assuming jurisdiction over the appellant, a seventeen-year-old resident of Maryland.

The procedure followed in this case was initiated by a complaint to the Juvenile Court dated February 23, 1961, and the sub-

sequent filing of an authorized petition by the investigating officer setting forth facts to bring the youth within the provisions of the Juvenile Court laws for the District of Columbia.[1] Trial occurred on June 13, 1961, and a final order was issued holding that the allegations of the petition had been established by competent evidence and that the child was within the jurisdiction of the Court and ordering that he be placed on probation for an indeterminate period of time "with the specific instruction that the boy not enter the District of Columbia without permission of the Court."

The record reveals that two patrolmen cruising in a car heard a woman standing on a streetcar platform call, "Police! Police!," and point toward the running appellant. They gave chase and when they caught him appellant said, "I didn't get the woman's pocketbook. The man told me to run because they was going to blame me." After placing the appellant in the cruiser, they returned to the platform, but the woman was no longer there and a search of the area failed to find her. The appellant was then taken to the precinct to await possible complaint and to question him. The woman never appeared and no complaint was ever filed. During the questioning of appellant, the officers noted that his eyes were "glossy" and that he responded slowly and poorly. No alcohol was smelled and he denied that he had been drinking. In rolling up his sleeves, he displayed fresh needle marks on his left arm and admitted taking heroin twice a week.

The philosophy, procedure and objective purposes of the Juvenile Court are now well established. The legislation creating said court is laudable in its recognition that the well-being of the state coincides with the welfare of the individual and sets up a judicial body which will inquire into the needs of the wayward minor and provide him with the training, care and rehabilitation necessary to divert his first steps from what might well be a long path of crime.[2] In this regard Judge Prettyman in Pee v. United States, 107 U.S.App.D.C. 47, 49, 274 F.2d 556, 558, said,

> "* * * In the event a child commits an offense against the law, the state assumes a position as *parens patriae* and cares for the child. Such a one is not accused of a crime, not tried for a crime, not convicted of a crime, not deemed to be a criminal, not punished as a criminal, and no public record is made of his alleged offense. In effect he is exempt from the criminal law."

And this court said in In re McDonald, supra, (at page 655):

> "* * * It (the Act) provided for a new informal proceeding with the rights and procedures of civil actions governing. Innocence or guilt are not in issue, but an adjudication of the child's status is. Retribution and punishment are not its purposes, but protection and rehabilitation of the child are. And if the detriments and stigma of a criminal trial do not attach to the juvenile before this court, then it follows that neither does he have the right to be tried as a criminal. * * *"

In the light of these now well-settled principles that the Juvenile Court Act is not penal in nature, we have examined the alleged errors charged by the appellant.

The petition filed in this case reads as follows:

> "That said child is in a situation injurious to his health and morals, to wit: found in the District of Columbia on the evening of February 23, 1961, with fresh needle marks on both of his arms, said child has been associating with a narcotic addict; purchasing narcotics in the District of Columbia from an un-

---

1. Juvenile Court Act, Code 1961, § 11–901 et seq.

2. In re McDonald, D.C.Mun.App., 153 A.2d 651, 654.

identified person, and has been using heroin without lawful authorization since November, 1960."

■ Although appellant has enumerated several errors in his brief, we do not find in disposing of them that it is necessary to consider each separately. His primary contention deals with the applicability of the proper subsection of the District of Columbia Code under which he was brought within the jurisdiction of the Juvenile Court and the sufficiency of proof to support the findings of the court as to existence of jurisdiction. He claims that the petition *charged* him with violation of Section 11–906(a) (9) [3] and that he was held by the court under Section 11–906(a) (4).[4] By chance or design the language in the petition is similar to that used in the former subsection. The trial judge found that the court had jurisdiction over the youth under both subsections. The appellant misconceives the nature and purpose of the petition. It is not a criminal indictment or information. He further contends that the evidence does not support a finding that the court had jurisdiction under subsection 11–906(a) (9). As we have pointed out above, Juvenile Court proceedings are civil in nature, the statute requiring only that the petition contain a brief statement of the facts which give the court jurisdiction.[5] The present petition conformed to the statutory requirement by setting forth no *charge* against the youth, but alleging facts which, if found true by the court, would give it valid jurisdiction over him for his protection and safety.

■ Suspiciously running away was sufficient cause for the investigating officer to stop and question the youth. When the police could not locate the complaining citizen, it was natural that they took appellant to the precinct to await the probable appearance of the complainant. At this time they questioned the youth. His physical appearance and slow or delayed responses indicated something was wrong with him. He denied having had anything to drink but admitted he took heroin by injection, as revealed by the fresh puncture marks on his left arm. His statements were voluntarily made.[6] For his own safety and to keep him away from further contact with any dope peddlers in the District of Columbia he was placed within the jurisdiction of the Juvenile Court by the authorized filing of a petition for that purpose. It is of no legal significance or importance whether jurisdiction was invoked under one or more provisions of the Juvenile Statute (Title 11–906). We are in accord with the Government's contention that the provisions are not mutually exclusive in order to give valid

3. Title 11–906(a), Code, 1961: "This subchapter shall apply to any person under the age of 18 years * * *
"(9) Who engages in an occupation or is in a situation dangerous to life or limb or injurious to the health or morals of himself or others;"

4. Title 11–906(a) (4), Code, 1961: "This subchapter shall apply to any person under the age of 18 years * * *
"(4) Who habitually so deports himself as to injure or endanger himself or the morals or safety of himself or others;"

5. "If the director of social work finds that jurisdiction should be acquired, he shall * * * authorize a petition to be filed * * *
"The petition shall be verified by the officer making the investigation, or some other person having personal knowledge of the case, and shall allege briefly the facts which bring said child within the provisions of this subchapter, and stating the name, age, and residence (1) of the child; (2) of his parents; (3) of his legal guardian, if there be one; (4) of the person or persons having custody or control of the child; and (5) of the nearest known relative, if no parent or guardian can be found. If any of the facts herein required are not known by the petitioner the petition shall so state." Code, 1961, Sec. 11–908.

6. Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751, and cases therein cited, cert. den. 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552; In re McDonald, supra; In re Davis, D.C.Mun.App., 83 A.2d 590–593.

jurisdiction. Proof under one subsection would be sufficient, even though the testimony might have justified holding the youth under more than one subsection.

Appellant is not being held as a criminal. He is not being charged as a criminal. His hearing on the petition was not to establish his guilt or innocence of a crime or misdemeanor but merely to place him under the jurisdiction of the Juvenile Court for his own need for protection and security from the danger of a future life as a dope addict.

██ The only other important assignment of error concerns the allegedly improper admission of a report by a physician

which stated that appellant was addicted to heroin. If there was error, we are convinced it was harmless.[7] The observation of the police officers and the voluntary admissions of appellant were ample to support the judge's findings that the youth came within the provisions of the Juvenile Court Act.

The other assignments of error are without merit and need no further consideration. We are satisfied that the rights of the juvenile appellant were fully protected in this case and the record discloses no error warranting reversal.

Affirmed.

7. Upon admitting the evidence, the trial judge said: "For the record, I think it should be indicated that the Court twice indicated to Mr. Mitchell that it did not feel that the medical report from the Receiving Home was a necessary part of this hearing, but Mr. Mitchell was very anxious that it be brought to support his statement that there was no medical evidence to support this allegation." Tr., p. 135.