**DISTRICT OF COLUMBIA,**
**Appellant,**
**v.**
**I. P., Appellee.**

**No. 7709.**

District of Columbia Court of Appeals.

Argued Sept. 25, 1974.

Decided March 17, 1975.

---

E. Calvin Golumbic and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Washington, D.C., was on the brief, for appellant.

Warren C. Nighswander, Washington, D.C., for appellee.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

This appeal is taken by the District of Columbia from an order of the Family Division of Superior Court dismissing a delinquency petition charging robbery on the part of appellee, a juvenile, on the ground that further proceedings thereon were barred by the Fifth Amendment prohibition against double jeopardy. The Family Division found that jeopardy had attached in a previous fact-finding hearing on the same matter which had ended in a mistrial. The government concedes that were this an adult criminal case double jeopardy would bar a second hearing, but it argues that double jeopardy is inapplicable to juvenile court proceedings.[1] We disagree and affirm the lower court's dismissal of the petition, finding that if juveniles are to be accorded "fundamental fairness" as mandated by the Supreme Court, then they must be granted Fifth Amendment protection against being twice put in jeopardy. To the extent that In re McDonald, D.C. Mun.App., 153 A.2d 651 (1959), cert. denied, 363 U.S. 847, 80 S.Ct. 1620, 4 L.Ed.2d 1730 (1960), is inconsistent with this opinion, we deem it has been so eroded by Su-

---

1. The District of Columbia Code in setting forth the procedures to be followed in juvenile delinquency hearings makes no references to double jeopardy. D.C.Code 1973, § 16–2301 et seq.

preme Court holdings discussed *infra* that that decision is no longer viable.

The facts involved in this case are undisputed. Appellee, a fifteen-year-old juvenile, was charged in the Family Division of Superior Court with robbery (purse snatching) [2] in a petition dated April 9, 1973.[3] A fact-finding hearing, which was the functional equivalent of an adult criminal trial,[4] was held on July 24, 1973. In the course of cross-examination of the victim, the first government witness, it developed that the arresting officer had taken notes of his interview with her. When it was established that the officer had read the notes back to the witness and that she had verified their accuracy, the court twice ordered that the notes be produced. The prosecutor retorted that he could not produce the notes without calling another witness. He then called the officer who had taken the notes, and further stated that he would later need to recall the victim to clarify what notes were taken. The court then told the prosecutor, "I think you are trying to hide something" and declared sua sponte, "The court recuses itself. Mistrial."

When the government subsequently noted its intention to seek a new trial date, the respondent moved to dismiss the petition on the ground of double jeopardy. The motion was granted and the government appealed that ruling. We remanded the case sua sponte to the trial judge to supplement the record with an explanation of why he recused himself, if in fact he

had, and the reason for declaring a mistrial. The trial judge responded that he had recused himself because he felt that the opinion he had expressed in open court that the prosecutor was improperly attempting to withhold Jencks Act material would make it most difficult for him "to preserve the appearance, and perhaps the fact, of fairness during a continuation of the trial."

■ Both parties concede and we agree that the actions of the trial judge in recusing himself and declaring a mistrial were not dictated by manifest necessity. In an adult criminal case, this would preclude a new trial on a plea of double jeopardy. United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970).[5] Consequently, the sole issue presented on this appeal is whether the Fifth Amendment prohibition against double jeopardy applies to juvenile court proceedings.

Crucial to the resolution of this case is an evaluation of the continuing validity of In re McDonald, *supra*, in which this court held that double jeopardy did not apply to District of Columbia juvenile court proceedings because, *inter alia*, those proceedings were civil rather than criminal in nature. We said in that case that the government had a right to appeal a sua sponte trial court ruling dismissing a juvenile petition in a school arson case because the government refused to disclose the identity of its informants. The trial court's ruling was reversed with instructions to grant a new hearing. The *McDonald* decision re-

2. D.C.Code 1973, § 22–2901.

3. While the wording of the petition did not precisely follow the language of the robbery statute, any defect in this regard was cured by the government's opening statement which was made without objection.

4. D.C.Code 1973, §§ 16–2316 and 16–2317.

5. In United States v. Jorn, *supra*, the Supreme Court emphasized "where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal'" (400

U.S. at 484, 91 S.Ct. at 557) and that "[i]n the absence of such a motion [for a mistrial] the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. *See* United States v. Perez, 22 U.S. [579] at 580, 9 Wheat [579] at 580, [6 L.Ed. 165.]" 400 U.S. at 485, 91 S.Ct. at 557.

In the instant case the trial court declared a mistrial without stating its reason and without granting defense counsel an opportunity to be heard on that critical issue.

flected an optimism—typical of the juvenile court reform movement—that an informal juvenile court which treated juveniles as objects of solicitude rather than criminal defendants could divert wayward minors from "what might well be a long path of crime." 153 A.2d at 654. Characterizing the status of juvenile delinquents in the eyes of the law at that time, the *McDonald* court quoted the circuit court with approval as follows (*id.* at 654):

"* * * In the event a child commits an offense against the law, the state assumes a position as *parens patriae* and cares for the child. Such a one is not accused of a crime, not tried for a crime, not convicted of a crime, not deemed to be a criminal, not punished as a criminal, and no public record is made of his alleged offense. In effect he is exempt from the criminal law." [Quoting Pee v. United States, 107 U.S.App.D.C. 47, 49, 274 F.2d 556, 558 (1959).]

This court, citing in support the decisions of all six appellate courts which had considered the issue, then concluded that the prohibition against double jeopardy did not apply to juvenile proceedings.

The idealistic philosophy and high hopes concerning the juvenile court system, which constituted the foundation of the decision in *McDonald* and the cases on which it relied, have come under increasing criticism in recent years as being unrealistic and inadequate. Indicative of this development in the Supreme Court's opinion in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967), in which an expanded role for constitutional due process was held to be necessary in proceedings in which a juvenile is determined to be delinquent for alleged misconduct, the consequence of which may be institutional commitment.[6] In so finding, the *Gault* Court recognized that:

The early conception of the Juvenile Court proceeding was one in which a fatherly judge touched the heart and conscience of the erring youth by talking over his problems, by paternal advice and admonition, and in which, in extreme situations, benevolent and wise institutions of the State provided guidance and help "to save him from a downward career." . . . [387 U.S. at 25–26, 87 S.Ct. at 1442–1443 (footnote omitted).]

The Court recognized with regret, however, that in practice "the results [of the juvenile court experiment] have not been entirely satisfactory", 387 U.S. at 17–18, 87 S.Ct. at 1438, and stated that:

Failure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of a remedy. . . . [387 U.S. at 19–20, 87 S.Ct. at 1439.]

The reality of the plight of a juvenile in a delinquency hearing is that he is charged with misconduct, i. e., a criminal offense, which, if proved, may result in his commitment to an institution for a period which may well exceed the maximum commitment prescribed for the same offense if committed by an adult. *See* 387 U.S. at 27, 29, 87 S.Ct. 1428. The *Gault* Court concluded that in such a hearing, a juvenile is at least entitled to the right to counsel, confrontation and cross-examination, written notice of the charges against him, and the privilege against self-incrimination.

■ In the post-*Gault* era there has been a growing recognition that juveniles are entitled to the fundamental elements of due process, although the Supreme Court has refused a blanket grant to juveniles of all of the rights available to adult criminal defendants. The Court in In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), extended the due process rights available to juveniles in delinquency proceedings to include "proof beyond a reasonable doubt of every fact nec-

6. *See also* Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

essary to constitute the crime with which he is charged," but in McKeiver v. Pennsylvania, 403 U.S. 528, 545, 91 S.Ct. 1976, 1986 (1971), it held that "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." The due process standard emerging from *McKeiver* is essentially one of balancing the degree to which various due process elements are necessary to insure the fundamental fairness in juvenile court proceedings against the extent to which such elements would destroy the flexibility and confidentiality essential to the juvenile court concept.

The overwhelming majority of courts which have considered the issue now before us in light of In re Gault, *supra,* and its progeny have concluded that the Fifth Amendment protection against double jeopardy is applicable to juvenile proceedings.[7] Particularly significant to our consideration of the continuing validity of our decision in In re McDonald, *supra,* is the fact that courts in three of the six jurisdictions cited in *McDonald* have subsequently extended the protection against double jeopardy to juveniles. *See, e. g.,* M. v. Superior Court of Shasta County, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971) (en banc); Tolliver v. Judges of Family Court, 59 Misc.2d 104, 298 N.Y.S.2d 237 (Sup.Ct. 1969); Collins v. State, 429 S.W.2d 650 (Tex.Civ.App.1968). In a fourth jurisdiction, Maryland, earlier case law holding that double jeopardy did not apply to juveniles has been seriously questioned. In re Anderson, 272 Md. 85, 321 A.2d 516 (1974).

Moreover, there is authority in this jurisdiction which has questioned the viability of *McDonald.* Most recently in In re J. A. H., D.C.App., 315 A.2d 825 (1974), this court, while not reaching the double jeopardy issue, noted that:

> Although this precise issue has not been resolved by the Supreme Court, more recent cases such as In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L.E.2d 368 (1970), cast great doubt on the continuing validity of *McDonald.* . . . [315 A.2d at 827 n. 2.]

In an opinion which predated In re Gault, District Court Judge Holtzoff eschewed the criminal-civil distinction[8] as a rationalization for depriving juveniles of protection against double jeopardy, stating:

> Ineluctible logic leads to the conclusion that the constitutional protection against double jeopardy, as is the case with the right of counsel and the privilege against self-incrimination, is applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person. Necessarily, therefore, this is true of proceedings in the Juvenile Court. . . . [United States v. Dickerson, 168 F.Supp. 899, 901 (D.D.C.1958), rev'd on other grounds, 106 U.S.App.D.C. 221, 271 F.2d 487 (1959).]

Judge Holtzoff's analysis has been used as a model by a number of courts which have

---

7. *E. g.,* Jones v. Breed, 497 F.2d 1160 (9th Cir. 1974), cert. granted, 419 U.S. 894, 95 S.Ct. 172, 42 L.Ed.2d 138 (1974) (No. 73–1995); Fain v. Duff, 488 F.2d 218 (5th Cir. 1973), petition for cert. filed, 43 U.S. L.W. 3035 (U.S. Aug. 8, 1974); In re Juvenile, 306 N.E.2d 822 (Mass.1974); State v. Marshall, 503 S.W.2d 875 (Tex.Civ.App. 1973); State v. Jackson, 503 S.W.2d 185 (Tenn.1973); State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); State v. Halverson, 192 N.W.2d 765 (Iowa 1971); M. v. Superior Court of Shasta County, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971) (en banc); Tolliver v. Judges of Family Court, 59 Misc.2d 104, 298 N.Y.S.2d 237 (Sup.Ct. 1969); Collins v. State, 429 S.W.2d 650 (Tex. Civ.App.1968). *Cf.* In re Anderson, 272 Md. 85, 321 A.2d 516 (1974); Anonymous v. Superior Court, 10 Ariz.App. 243, 457 P.2d 956 (1969).

8. This court has similarly steered away "from the use of beguiling labels or definitions" such as the civil-criminal distinction in discussing juvenile proceedings. District of Columbia v. M. A. C., D.C.App., 328 A.2d 375, 376 (1974).

subsequently considered this issue and his opinion on this point was cited with approval in Rice v. District of Columbia, 128 U.S.App.D.C. 194, 196 n. 2, 385 F.2d 976, 978 n. 2 (1967).

A delinquency hearing, while hopefully characterized by a degree of informality and flexibility, still may be a traumatic experience for a juvenile. We can see no justification for subjecting him to more than one adjudicative hearing unless it is manifestly necessary in the interest of justice to terminate the initial hearing short of final decision. The granting of such protection should not significantly affect the flexibility of juvenile court hearings, because double jeopardy only limits the number of hearings which may be held, not the nature of the proceedings.

■ We hold that once jeopardy has attached to a juvenile in an adjudicative hearing at which he is charged with misconduct which, if committed by an adult would constitute a crime [9] and, if proved, may result in institutional commitment, any subsequent adjudicative hearing for the same offense is prohibited by the Fifth Amendment prohibition against double jeopardy.

We do not by this decision equate delinquency adjudications with adult criminal trials in every respect. For one reason such a result would be precluded by D.C. Code 1973, § 16–2318 which provides that a juvenile adjudication "is not a conviction of a crime and does not impose any civil disability ordinarily resulting from a conviction . . . ." [10] We do recognize, however, that delinquency adjudications entail a number of criminal aspects, the most significant being that the juvenile is charged with having violated a criminal statute, each element of the charge must be proved beyond a reasonable doubt, and the consequence of the hearing may be institutional confinement. In light of such factors, it seems clear that fundamental fairness requires that juveniles be protected against being twice put in jeopardy for the same offense.

The government asserted at oral argument that jeopardy does not attach in a juvenile hearing which stops short of final adjudication, at least in cases in which the termination was through no fault of the government. This argument misconceives the purpose of the double jeopardy prohibition, which is to protect citizens, not the prosecutor.

■ In an adult criminal trial before the court sitting without a jury, jeopardy attaches "when the accused has been subjected to a charge and the court has begun to hear evidence." Newman v. United States, 133 U.S.App.D.C. 271, 410 F.2d 259, cert. denied, 396 U.S. 868, 90 S.Ct. 132, 24 L.Ed.2d 121 (1969) (citations omitted). The same should be true of a juvenile delinquency proceeding. M. v. Superior Court of Shasta County, 4 Cal.3d 370, 93 Cal.Rptr. 752, 756, 482 P.2d 664, 668 (1971) (en banc). See In re Juvenile, 306 N.E.2d 822, 829 (Mass.1974); Tolliver v. Judges of Family Court, 59 Misc.2d 104, 208 N.Y.S.2d 237 (Sup.Ct.1969).[11]

9. The scope of this opinion is limited to delinquency adjudications based on "delinquent acts" as that term is defined in D.C.Code 1973, § 16–2301(7). We express no opinion on the applicability of the double jeopardy clause to other juvenile adjudications such as "child in need of supervision" or "neglected child" cases.

10. The conclusion we reach is not inconsistent with § 16–2318 since we are concerned here with the fairness of the juvenile adjudicative proceedings whereas § 16–2318 relates to limiting the consequences of an adjudication.

11. Our conclusion is consistent with The Legislative Guide for Drafting Family and Juvenile Court Acts § 27 (Dept. of H. E. W., Childrens Bureau Pub. No. 472–1969) which provides that:

Criminal proceedings and other juvenile proceedings based upon the offense alleged in the petition or an offense based upon the same conduct is barred where the court has begun taking evidence or where the court has accepted a child's plea of guilty to the petition.

In the instant case, the bar of former jeopardy must be applied because the mistrial was not declared until after the court began to hear evidence. Since the Family Division's sua sponte termination of the hearing was not dictated by manifest necessity, the court correctly granted appellee's motion to dismiss the petition on the ground of double jeopardy when the government attempted to set a new trial date.

Affirmed.