**Thomas Edward SHIOUTAKON,**
Appellant,

v.

**DISTRICT OF COLUMBIA,**
Appellee.

No. 12785.

United States Court of Appeals
District of Columbia Circuit.

Argued March 26, 1956.

Decided May 17, 1956.

---

1. 53 Stat. 1404 (1939), 45 U.S.C.A. § 51.

Mr. James J. Laughlin, Washington, D. C., with whom Mr. Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Richard W. Barton, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Milton D. Korman, Asst. Corp. Counsel, were on the brief, for appellee.

Messrs. Edward de Grazia, and Howard Adler, Jr., Washington, D. C., filed a brief on behalf of American Civil Liberties Union as amicus curiae, urging reversal.

Before PRETTYMAN, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

This juvenile delinquency proceeding was instituted by a petition charging our 15-year old appellant with having used an automobile without the owner's consent.[1] At the hearing before the Juvenile Court, he admitted the charge and was committed to a training school.[2] He was not represented by counsel, nor did the judge advise him or his mother, who was present,[3] that he might be represented by counsel. About three months later, counsel appeared for him and filed a motion to vacate and set aside the court's judgment on the ground that he had been deprived of his constitutional right to counsel. Denial of this motion was appealed to the Municipal Court of

1. The Juvenile Court Act, D.C.Code, § 11–901 et seq. (1951), as amended (Supp. 1954), applies, *inter alia*, to "any person under the age of 18 years—(1) Who has violated any law; or who has violated any ordinance or regulation of the District of Columbia * * *." D.C.Code, § 11–906

(a) (1951). D.C.Code, § 11–908 (1951) provides for filing of a petition.

2. D.C.Code, § 11–915 (1951), as amended (Supp.1954).

3. His father's whereabouts were unknown.

Appeals which affirmed.[4] This court allowed a petition for leave to appeal because the question presented is important to the fair administration of justice.

One of the aims of the 1938 revision of the Juvenile Court Act [5] was to eliminate the formalities of a criminal proceeding which emphasizes "punishment and retribution," and to provide in its place a more informal procedure designed to enhance the protective and rehabilitative features which have come to be associated with modern juvenile courts.[6]

■ To this end the Act authorizes the Director of Social Work to investigate any complaint "to determine whether the interests of the public or of the child require that further action be taken." [7] Congress clearly intended, in this section, to encourage the disposition of

cases on a social rather than legal basis. In the event such disposition is deemed unwise, "further action" may be taken, as in the present case, by the filing of a petition which requires a court hearing.[8]

■ But even where a petition is filed, the proceedings are meant to be non-criminal and non-formal in nature.[9] Instead of an indictment or information, there is a petition entitled " 'In the matter of ———— * * *.' " The hearing itself may be conducted in an "informal manner," [10] that is, without the "technicalities which are not essential to justice and which tend to confuse or intimidate a child." [11] The court is not open to the general public.[12] In the event an adjudication of delinquency results, the court is authorized to place the child on probation in his parents' custody, to commit him to the Board of Public Welfare or to a training school, or to "make

4. Shioutakon v. District of Columbia, D.C. Mun.App.1955, 114 A.2d 896.

5. 52 Stat. 596 (1938), D.C.Code, § 11–902 (1951).

6. S.Rep. No. 530, 75th Cong., 1st Sess., 4 (1937); H.R.Rep. No. 177, 75th Cong., 1st Sess. 3 (1937).

7. D.C.Code, § 1–908 (1951).

8. Out of 4412 complaints received by the court in the year ending June 30, 1955, 1318 were informally disposed of by the juvenile section either through dismissal or referral to social agencies. Petitions were filed on 3094 complaints. Annual Report, Juvenile Court of the District of Columbia 1954–55. In the year ending June 30, 1954, 1205 out of 5211 complaints were informally terminated; petitions on 4006 were filed. Annual Report 1954. Out of a total of 5351 complaints in the year ending June 30, 1953, 1440 were informally terminated, and 3911 went to hearing. Annual Report 1953.

9. D.C.Code, § 11–908 (1951).

10. D.C.Code, § 11–915 (1951). Nevertheless it appears that "the atmosphere of formality which surrounds the hearings [in the District] is equal to or greater than that in hearings in adult courts," Report of a Committee Composed of Representatives from United Community Services, Department of Justice, Children's Bureau, Department of Health,

Education and Welfare 29 (1951) (hereinafter referred to as "Survey Report"). The courtroom has "all the physical attributes of an adult court," including raised benches and equipment for the prosecuting attorney. The judge wears the usual black robe, the court clerk and corporation counsel are present, announcements are made in a formal manner by a marshal, and the child sits in an enclosure without his parents. The charges are read out loud to the child and he is asked to admit or deny them. He is put under oath if he testifies. Ibid.

Such procedure is, in most respects, contrary to that generally recommended for, and observed by juvenile courts. Standards for Specialized Courts Dealing With Children, Children's Bureau, Department of Health, Education and Welfare 54–55 (1954) (hereinafter referred to as "Standards for Specialized Courts"); Survey Report 28. No change in courtroom procedure has been made since the 1951 survey. Hearings on Juvenile Delinquency in the District of Columbia Before the Subcommittee to Investigate Juvenile Delinquency of the Senate Committee on the Judiciary, 83d Cong., 1st and 2d Sess., Exh. 15(b), pp. 247–48 (1953–54).

11. Standards for Specialized Courts 54 (1954), quoting Lou, Juvenile Courts in the United States 129 (1927).

12. D.C.Code, § 11–915 (Supp.1954).

such further disposition" as it deems in the child's "best interests." [13] The statute's aim is to avoid the stigmatizing effects of a criminal conviction.[14]

In recognizing and approving the laudable objectives of this system of "individualized justice," [15] we may not overlook the fact that the status and rights of the child as well as rights of the parents are involved.[16] That fact inheres in the court's power to deprive the child of liberty and the parents of custody.[17] And where, as here, the exercise of this power rests upon an alleged violation of law, the court must find, from evidence in a hearing, whether the child has in fact committed an unlawful act.

 The serious nature and effect of this adjudication suggests that Congress could not have been unaware of the need for effective assistance of counsel.[18] Although the Act in terms neither recognizes nor withholds such assistance, the legislative history reflects congressional understanding that alleged delinquents would be represented by counsel.[19] That

there is a need for such representation to protect the child's interests is apparent, for example, from a realistic view of § 11–915's provision for "hearing." The "right to be heard" when personal liberty is at stake requires the effective assistance of counsel in a juvenile court quite as much as it does in a criminal court.[20] The need is also apparent from the provision for a jury on demand.[21] Clearly a child cannot, without the aid of counsel, competently decide whether he should exercise this right.

Rights afforded by the rules of the Juvenile Court would also be meaningless without legal assistance. Under Rule VIII, demand for a jury trial must be made *in writing* within five days of arraignment. If a jury is demanded, the juvenile may exercise peremptory challenges (Rule IX) and prepare written requests for instructions (Rule X). He is allowed to make written motion for a new trial or in arrest of judgment (Rule XII). Appeals to the Municipal Court of Appeals and to this court are available.

---

13. D.C.Code, § 11–915 (1951), as amended (Supp.1954).

14. The adjudication does not impose civil disabilities. The child is not "deemed a criminal" nor is any adjudication deemed a conviction of a crime. D.C.Code, § 11–915 (1951). See Thomas v. United States, 1941, 74 App.D.C. 167, 169–170, 121 F.2d 905, 907–908.

15. Standards for Specialized Courts 1.

16. Id. at 1–8, 53–58. Increasing concern for protecting the child in juvenile courts has been expressed by commentators. E. g., Rubin, Protecting the Child in the Juvenile Court, 43 J.Crim.L. 425 (1952); Tappan, Juvenile Delinquency 188–223 (1949).

17. D.C.Code, § 11–915 (1951), as amended (Supp.1954). In the year ending June 30, 1955, delinquency cases resulted in the commitment of 144 boys to the National Training School and 380 to the Department of Public Welfare. Annual Report, Juvenile Court of the District of Columbia 3 (1954–55).

18. Courts have found such need in deportation cases where, as here, deprivation of personal liberty is involved in pro-

ceedings that are civil rather than criminal. Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404, 406, affirmed 1956, 350 U.S. 990, 76 S.Ct. 541; Ex parte Chin Loy You, D.C.Mass.1915, 223 F. 833, 838, cited in Powell v. Alabama, 1932, 287 U.S. 45, 70, 53 S.Ct. 55, 77 L.Ed. 158. See also Colyer v. Skeffington, D.C.Mass. 1920, 265 F. 17, 47–48; Tisi v. Tod, 1924, 264 U.S. 131, 134, 44 S.Ct. 260, 68 L.Ed. 590. These cases recognize the right to counsel as an essential element of due process. In the present case, however, we do not reach consideration of due process requirements since our holding rests on our view of the statute.

19. H.R.Rep. No. 177, 75th Cong., 1st Sess. 3 (1937); S.Rep. No. 530, 75th Cong., 1st Sess. 4 (1937); 81 Cong.Rec. 1004 (1937). See also Standards for Specialized Courts 56–58.

20. See, e. g., Powell v. Alabama, 1932, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158, quoted in Johnson v. Zerbst, 1938, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461.

21. D.C.Code, § 11–915 (1951).

 Since an intelligent exercise of the juvenile's rights under the Act and the Rules clearly requires legal skills not possessed by the ordinary child under 18, it is plain that, as appellee, the District of Columbia, concedes, a juvenile is entitled to be represented by counsel if he or his parents or guardian choose to furnish one. Appellee contends, however, that the court is not required to advise a juvenile of that right, or to assure itself that the right has been intelligently waived. It also contends that the court is not required to appoint counsel where there is no such waiver or where the juvenile's family is indigent. We think these contentions are unsound.

Appellee in effect would have us accept the proposition that protection of a child's rights hinges on whether he is either something of a genius or a member of a family which can afford counsel. Obviously the intelligence quotient of the child or the economic position of his family cannot be controlling.[22] Our concern for the fair administration of justice[23] impels us to hold that, in this and in similar cases in the future,[24] the juvenile must be advised that he has a right to engage counsel or to have counsel named on his behalf.[25] And, where that right exists, the court must be assured that any waiver of it is intelligent and competent.[26]

We are in full accord with the objectives of the Act to enable the court to deal with children in an informal manner and to encourage dispositions, on the basis of all relevant social data, looking toward treatment rather than punishment. Requiring the court to inform an alleged delinquent like appellant, against whom a petition has been filed, that he has a right to counsel is not, we think, incompatible with these objectives.[27]

It follows from the foregoing discussion that the court erred in denying appellant's motion to vacate the judgment of commitment.

Reversed and remanded for further proceedings required by this opinion.

BASTIAN, Circuit Judge, concurs in the result.

---

22. Cf. Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585.

23. Griffin v. United States, 1949, 336 U.S. 704, 717–718; Fisher v. United States, 1946, 328 U.S. 463, 476, 66 S.Ct. 1318, 90 L.Ed. 1382; McNabb v. United States, 1943, 318 U.S. 332, 340–341, 63 S.Ct. 608, 87 L.Ed. 819; Kelly v. United States, 1952, 90 U.S.App.D.C. 125, 127, 194 F.2d 150, 152.

24. Durham v. United States, 1954, 94 U.S.App.D.C. 228, 240, 214 F.2d 862, 874, 45 A.L.R.2d 1430. Cf. Mr. Justice Frankfurter's opinion, concurring in Griffin v. Illinois, 351 U.S. at pages 25–26, 76 S.Ct. at page 593, with respect to the prospective application of a constitutional right.

25. We do not hold that counsel is essential in the preliminary stages before a petition is filed.

26. That question should be resolved as one of fact "in the light of [the child's] age, education, and information, and all other pertinent facts * * *." Williams v. Huff, 1944, 79 U.S.App.D.C. 31, 32, 142 F.2d 91, 92.

The court would be well advised to consult the child's parents or guardian where their interests are not adverse.

27. See Rubin, Protecting the Child in the Juvenile Court, 43 J.Crim.L. 425, 440 (1952); Standards for Specialized Courts 56.