**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert Lee DICKERSON, Jr., Defendant.**
**Cr. No. 999–58.**

United States District Court
District of Columbia.
Dec. 22, 1958.

Ned Alston Perry, Washington, D. C., for defendant.

Oliver Gasch, U. S. Atty., and Joseph M. Hannon, Asst. U. S. Atty., Washington, D. C., for the Government.

HOLTZOFF, District Judge.

This is a motion by the defendant to dismiss the indictment on the ground of former jeopardy.

The defendant, Robert Lee Dickerson, Jr., was arrested on a charge of robbery. As he was under 18 years of age, he was taken before the Juvenile Court of the District of Columbia. On August 18, 1958, a petition was filed in that court alleging that on July 15, 1958, he "participated in the taking from Joseph D. Lavender, at gunpoint, a billfold and change carrier". On August 22, 1958, Dickerson was brought before the judge. The files of the Juvenile Court contain the following record of the proceedings on that occasion:

"Robert Lee Dickerson, Jr.: Mother present. Boy and mother waive right to counsel. Boy *acknowledges* the petition in that he held a toy gun in the incident. Court finds boy within its jurisdiction as a delinquent child. Case continued for social study and recommendation as to disposition. Boy remanded to D. C. Receiving Home meanwhile."

On September 9, 1958, jurisdiction of the case was waived by the Juvenile Court to the United States District Court. On November 3, 1958, the grand jury returned an indictment charging Dickerson with the commission of a robbery against Joseph D. Lavender, on or about July 15, 1958. The defendant then filed a motion to dismiss the indictment on the ground of former jeopardy. The Government responded that, first, the Constitutional provision in regard to double jeopardy may not be invoked as a consequence of proceedings in the Juvenile Court, on the theory that this court is a civil and not a criminal tribunal; and second, that even if the provision were applicable, nevertheless, in this case jeopardy had not attached prior to the waiver of jurisdiction by that court.

The Juvenile Court of the District of Columbia has original and exclusive jurisdiction of violations of law committed by persons under 18 years of age, D.C.Code, § 11-907. In cases of certain types, however, the court is empowered to waive its jurisdiction and order the juvenile held for trial under the regular procedure of the court which would have jurisdiction of the offense if committed by an adult,—in this case the United States District Court for the District of Columbia. The applicable statute (D.C. Code, Title 11, § 914) reads as follows:

"If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases."

■■ There are two questions to be determined on this motion. The first is whether the Constitutional provision as to former jeopardy applies in respect to proceedings in the Juvenile Court.

American and English jurisprudence is distinguished by its emphasis on personal freedom. Under this system of law, no person may be deprived of his liberty without due process of law. This basic principle dates back to the Magna Charta. In addition, the Constitution of the United States expressly surrounds every person with certain affirmative, specific safeguards against deprivation

of liberty. This protection is not limited to criminal proceedings or to cases in a criminal court. It is present in any proceeding and in any tribunal if the liberty of the individual is involved. For example, an acquittal by a court-martial precludes a subsequent prosecution for the same offense in a civilian tribunal, Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084. Among these constitutional safeguards are the right of counsel guaranteed by the Sixth Amendment, the privilege against self-incrimination found in the Fifth Amendment, and the bar against double jeopardy likewise contained in the Fifth Amendment. The last mentioned privilege is worded as follows:

> " * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * * "

The meaning of this clause has been recently explained by the Supreme Court in the following manner, Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199:

> "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."

In Ex parte Lange, 18 Wall. 163, 169, 21 L.Ed. 872, it was said:

> "The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused

had suffered punishment or not, and whether in the former trial he had been acquitted or convicted."

It is unnecessary, therefore, to determine whether the Juvenile Court is a criminal court or, as is contended by the Government, a true civil court. Irrespective of this consideration, the constitutional limitations are applicable if the final action of the court may result in depriving a person of his liberty. Whether the enforced incarceration may be in a jail, penitentiary, reformatory, training school, or other institution, is immaterial. What matters is the potential loss of liberty.

Thus it has been held that the constitutional right of counsel exists in the Juvenile Court, In re Poff, D.C., 135 F.Supp. 224. I fully concur in the able opinion of Judge Curran in that case.[1] Even in purely civil proceedings the constitutional right of counsel applies if the result may be a deprivation of freedom of the individual. For example, it has been ruled by the United States Court of Appeals for this Circuit that the right of counsel prevails in a civil proceeding to commit an incompetent person to a mental hospital, Dooling v. Overholser, 100 U.S.App.D.C. 247, 243 F.2d 825.[2]

Ineluctable logic leads to the conclusion that the constitutional protection against double jeopardy, as is the case with the right of counsel and the privilege against self-incrimination, is applicable to all proceedings, irrespective of whether they are denominated criminal or civil, if the outcome may be deprivation of liberty of the person. Neces-

---

1. The United States Court of Appeals for the District of Columbia Circuit has also held that the right of counsel is applicable in the Juvenile Court, but based its decision on the construction of the Juvenile Court Act, D.C.Code 1951, § 11–901 et seq., and did not pass on the constitutional question, Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686.

2. It is not quite clear whether the Court of Appeals in the cited case predicated its conclusion on the construction of a statute, or on the constitutional right

of counsel. The applicable statute provides that "the court *may in its discretion* appoint an attorney or guardian ad litem to represent the alleged insane person at any hearing * * * " D.C. Code, Title 21, Sec. 308. Nevertheless the Court of Appeals held that the statute was mandatory, and referred at some length to Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, which defines the constitutional right of counsel. Obviously, therefore, the decision can be rationalized only on a constitutional basis.

sarily, therefore, this is true of proceedings in the Juvenile Court. Precious constitutional rights cannot be diminished or whittled away by the device of changing names of tribunals or modifying the nomenclature of legal proceedings. The test must be the nature and the essence of the proceeding rather than its title. If the result may be a loss of personal liberty, the constitutional safeguards apply.

The beneficent legislation creating the Juvenile Court was intended to ameliorate some of the rigidity of the criminal law and criminal procedure in cases in which juveniles were concerned. This was accomplished in large part by introducing a desirable degree of informality and flexibility in the proceedings, as well as in part by modifying the rather formidable terminology of criminal procedure. Manifestly, the ultimate objective was to confer additional rights and privileges on juvenile offenders beyond those to which they had been entitled previously, as well as in addition to those that adult offenders have under existing law. It is inconceivable that it was the intention to shear juveniles of rights that they would have if treated on the same basis as adult defendants. If, however, the legislation were to be so construed, it would be invalid as repugnant to the Constitution. The argument that the constitutional rights and privileges accorded to defendants in Federal courts should not be extended to juvenile offenders obviously constitutes a peculiar paradox.

■ The only privilege of defendants in criminal cases in Federal courts that is not accorded to defendants in the Juvenile Court of the District of Columbia, is the right to a preliminary hearing without unnecessary delay. It is an anomaly that this procedure does not exist in the Juvenile Court, United States v. White, D.C., 153 F.Supp. 809. It must be noted, however, that the right to a preliminary hearing is not a constitutional guaranty, important as it may be, but finds its foundation solely either in statutes or rules of court. There is no basis whatever for holding that a defendant in the Juvenile Court, even if he is named "respondent" instead of "defendant" may be bereft of his constitutional rights.

It may be of some interest to observe that the draftsmen of the Federal Juvenile Delinquency Act, which governs proceedings against juveniles in the Federal courts, acted on the assumption that proceedings under that statute must comply with constitutional requirements. Consequently, it was provided that a juvenile may be proceeded against as a juvenile delinquent only if he consents to such procedure, and then the consent is deemed a waiver of the right to prosecution solely by an indictment and of a trial by jury, 18 U.S.C. § 5032.

■ The second question to be resolved is whether in the instant case, the proceeding in the Juvenile Court had progressed to a point at which jeopardy attached. In a criminal proceeding, or a proceeding in the nature of a criminal proceeding, appearances in court may be classified into three categories: a preliminary hearing, an arraignment, and a trial or hearing. The same judicial officer at times may sit as a committing magistrate to hold preliminary hearings and at times as a judge to conduct arraignments or trials. This is true, for example, of the judges of the Municipal Court of the District of Columbia. Manifestly, no jeopardy attaches at a preliminary hearing. On the other hand, if a trial is commenced either by the empanelling of a jury in a jury trial, or by calling or swearing the first witness at a non-jury trial, jeopardy attaches. So, too, jeopardy attaches if at arraignment, or at any subsequent appearance in court, the defendant pleads guilty and his plea of guilty is accepted and a finding is made on the basis of such plea.[3] The acceptance of a plea of

3. People v. Goldstein, 32 Cal. 432; Boswell v. State, 111 Ind. 47, 49, 11 N.E. 788; Belter v. State, 178 Wis. 57, 62, 189 N.W. 270.

guilty constitutes a conviction, Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009.

In this instance the record of the Juvenile Court clearly indicates that the proceeding before the Judge was in the nature of an arraignment, at which the defendant (or the respondent, as he is known in that court) acknowledged his guilt, in effect pleading guilty, and the court found the respondent within its jurisdiction as a delinquent child. The case was continued for social study and recommendations as to disposition. This course is similar to the acceptance of a plea of guilty in the district court and reference to a probation officer for a presentence investigation. The inference is inescapable that this proceeding was not a preliminary hearing before the Juvenile Judge sitting as a committing magistrate, but an arraignment or trial before the court. Obviously jeopardy would have attached under those circumstances and the defendant would not be subject to prosecution in a subsequent case on the same charge. The conclusion is inevitable that in this instance jeopardy attached and that, therefore, the defendant may not be prosecuted in this Court on the same charge.

This result in no wise interferes with the statutory authority of the Juvenile Court to waive jurisdiction to the District Court in certain cases. The waiver of jurisdiction, however, must take place before jeopardy attaches. It may be exercised either after a preliminary hearing, or after an *ex parte* investigation, but may not occur after the defendant has pleaded guilty and his plea was accepted, or after the case has been tried, or the trial has been started in Juvenile Court. The mere fact that different terminology is used in the Juvenile Court in a commendable and humane effort to disassociate its activi-

ties from the atmosphere of a criminal tribunal, does not affect these conclusions. We must not be misled by names or terms, but must be guided by juristic concepts to which the names or terms are attached. From this standpoint, what transpired in this case was a plea of guilty by the defendant, an acceptance of the plea by the judge, and a finding by the judge. Obviously this was a conviction and, consequently, jeopardy attached.

It is true that the statute authorizing waiver of jurisdiction requires the Juvenile Court first to make an investigation. Such investigation does not necessarily comprise proceedings in court of a type that would be equivalent to the entry and acceptance of a plea of guilty or a trial. The investigation may be undertaken *ex parte* by the social staff of the court, and if any hearing takes place, it should be a preliminary hearing.

In view of the foregoing circumstances, the Court is constrained to hold that the plea of former jeopardy is well founded in this case. Accordingly, the motion to dismiss the indictment will be granted on that ground and the indictment will be dismissed. It does not follow, however, that the defendant should be discharged. The Juvenile Court may resume jurisdiction of the case and proceed from the point which the case had reached in that court. Accordingly, the defendant will be remanded to the custody of the Juvenile Court and returned to the Receiving Home.

Motion to dismiss the indictment on the ground of former jeopardy is granted. The case is remanded to the Juvenile Court of the District of Columbia. The defendant is remanded to the custody of the Juvenile Court, and his transfer back to the Receiving Home will be ordered.

Counsel will prepare and submit an appropriate order.