**UNITED STATES of America,**
**Appellant,**

v.

**Robert L. DICKERSON, Appellee.**

**No. 14959.**

United States Court of Appeals District of Columbia Circuit.

Argued June 24, 1959.

Decided Sept. 30, 1959.

488

Mr. Louis M. Kaplan, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellant.

Mr. Samuel J. L'Hommedieu, Jr., Washington, D. C. (appointed by this court), for appellee.

Before WILBUR K. MILLER, BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This appeal by the United States is from a final order of the District Court granting appellee's (defendant's) motion to dismiss an indictment on the ground of double jeopardy.

On August 18, 1958, appellee, 17 years of age, was arrested pursuant to petitions filed in the Juvenile Court under the provisions of § 11–908, D.C.Code (1951). These petitions charged robbery on August 15, 1958, and conspiracy to commit robbery on August 19, 1958. A preliminary hearing, at which appellee and his mother appeared, was held on August 22, 1958, in accordance with § 11–915 of the Code.[1] The minute entry

---

1. Section 11–915 provides, in part, as follows:

"The court may conduct the hearing in an informal manner, and may adjourn the hearing from time to time * * *.

"If the court shall find that the child comes within the provisions of this chapter, it may by order duly entered proceed as follows:

"(1) Place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court shall determine.

"(2) Commit the child to the Board of Public Welfare; * * * or to the National Training School for Boys if in need of such care as is given in such school; or to a qualified suitable private institution or agency willing and able to assume the education, care, and maintenance of such child without expense to the public. [As amended Aug. 3, 1951, 65 Stat. 154, ch. 291, § 4].

"(3) Make such further disposition of the child as may be provided by law and as the court may deem to be best for the best interests of the child: Provided, That nothing herein shall be construed as authorizing the removal of the child from the custody of his parents unless his welfare and the safety and protection of the public can not be adequately safeguarded without such removal.

\* \* \* \* \*

"No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction of a crime, nor shall any child be charged with or convicted of a crime in any court, except as provided in section 11–914 [infra]. The disposition of a child or any evidence given in the court shall not be admissible as evidence

made by the courtroom clerk of the Juvenile Court on the occasion of that hearing reads:

"Robert Lee Dickerson, Jr.: Mother present. Boy and mother waive right to counsel. Boy acknowledges the petition in that he held a toy gun in the incident. Court finds boy within its jurisdiction as a delinquent child. Case continued for social study and recommendation as to disposition. Boy remanded to D. C. Receiving Home meanwhile."

However, this entry does not tell the whole story. From the affidavit of the Juvenile Court Judge filed in these proceedings, it appears that prior to July 1957 any respondent concerning whom a petition had been filed in the Juvenile Court was held in detention at the Receiving Home until a full social study had been made and recommendations were ready for the disposition of the case. This often meant that the respondent remained in the Receiving Home and did not appear before the Juvenile Court for five or six weeks. In order to afford such a respondent a prompt initial hearing, the Juvenile Court, in July 1957, instituted "detention hearings," which are held every Tuesday and Friday morning before the Juvenile Court Judge within a maximum of five days after a respondent is placed in the Receiving Home. At these "detention hearings" the standard procedure is as follows:

1. To read the allegations of the petition or petitions to the respondent and his parents.

2. To determine certain jurisdictional aspects of the case, such as the age of the respondent and whether the facts alleged constituted a law violation, a dependency situation, or other matters falling within § 11–906(a)[2] of the D.C. Code.

3. To inform the respondent and his parents of their right to be represented by counsel before the Juvenile Court.

4. If the respondent and his parents waive their right to be represented by counsel, to determine whether the respondent acknowledges or denies the allegations of the petition. If respondent denies the allegations, to set a date for trial of the issue; if he acknowledges the allegations, either to continue the case for social study and recommendations or, in the case of a respondent already under the supervision of the Juvenile Court, to make a disposition.

5. To determine whether the respondent should be released to the custody of his parents on his and their personal recognizance, or whether he should be remanded to the Receiving Home pending completion of a social study and recommendations for disposition.

After the two petitions alleging law violations by appellee had been filed, and four days after he had been arrested, appellee, accompanied by his mother, appeared at the "detention hearing" before the Juvenile Court Judge on August 22, 1958. No social study had been made at that time by the court's Social Service Division and, consequently, no recommendations for disposition were available. The Judge personally read to appellee the allegations of the two petitions, which had been sworn to by an officer of the Juvenile Squad of the Youth Aid Division of the Metropolitan Police Department. He also informed appellee and his mother that he had received a request from the Metropolitan Police Department

against the child in any case or proceeding in any other court * * *."

Section 11–914 provides: "If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this Act in conducting and disposing of such cases."

2. Section 11–906(a) sets forth the application of Chapter 9 of Title 11, and definitions.

to consider exercising his discretion to waive jurisdiction over the alleged felony-type offenses to the United States District Court for trial under the regular procedure of that court. The Judge then ascertained that appellee was 17 years of age and that the allegations of the petitions stated violations of the laws of the District of Columbia which, if proved, would place appellee within the jurisdiction of the Juvenile Court. Thereafter he informed appellee and his mother of appellee's right to be represented by counsel of his own choosing or to request the court to appoint counsel to represent him. Both appellee and his mother stated that they wished to waive their right to representation by counsel and signed statements to that effect.

During the "detention hearing" no complaining witness was present in the courtroom, nor was any testimony taken. Appellee acknowledged being involved in the allegations of the petitions then under consideration in that he had held a toy gun during the alleged robbery. The judge then made the determination that appellee was within the jurisdiction of the Juvenile Court and should be remanded to the Receiving Home pending a full social study and recommendations as to whether or not that court should waive jurisdiction in accordance with § 11–914, supra, note 1. No adjudication or disposition such as is envisaged by § 11–915 was made at the hearing on August 22, 1958. As was the standard procedure in the Juvenile Court at that· time, the courtroom clerk then made a summary of the hearing by the minute entry set out above.

Subsequently, on September ·9, 1958, after receipt of a full social study and recommendations by the Social Service Division of the Juvenile Court, and without further hearing, the judge waived jurisdiction to the District Court for trial.

After jurisdiction was so waived, appellee was indicted in the District Court on a charge of robbery (violation of § 22–2901, D.C.Code (1951)), growing out of the August 15, 1958 charge. On motion of appellee to dismiss the indictment on the ground of double jeopardy, the indictment was dismissed, the District Judge, however, staying the dismissal until disposition of the appeal taken by the United States. As will be seen from a reading of the opinion of the District Judge,[3] the indictment was dismissed because the court felt that "the constitutional protection against double jeopardy * * * is applicable to all proceedings, irrespective of whether they are denominated civil or criminal, if the outcome may be deprivation of liberty of the person," and that this protection is applicable to proceedings in the Juvenile Court.

Appellee urges that as at the preliminary hearing held August 22, 1958, he had admitted his "involvement" in the offense charged, the Juvenile Court could not exercise its discretion under § 11–914 in as much as jeopardy attached when the admission was made.

The Government, on the other hand, urges that the double jeopardy provisions of the Fifth Amendment of the Constitution are not applicable to proceedings in the Juvenile Court; and that, assuming those provisions are applicable, jeopardy did not attach under the circumstances of this case.

■ Without deciding whether jeopardy can ever attach to a disposition made by a juvenile court, either because the Constitution is directly applicable [4] or because subsequent proceedings would be "fundamentally unfair," [5] we hold that in the circumstances of this case no jeopardy attached as a result of proceedings in the Juvenile Court. From the undisputed affidavit of the Juvenile Court

3. D.C.1958, 168 F.Supp. 899, 901.

4. See Pee v. United States, —— U.S.App. D.C. —, —— ·F.2d ——, decided by this court ·June 25, 1959. See In the Matter

of McDonald, D.C.Mun.App.1959, 153 A. 2d 651, and cases therein cited.

5. Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666, 60·A.L.R.2d 686.

Judge,[6] *supra,* it conclusively appears that the purpose and effect of the proceedings which he conducted were to provide a prompt initial or preliminary hearing in order to set a date for trial if the allegations of the petitions were denied; otherwise, to continue the case pending completion of a full social study and recommendations for disposition under § 11–914. Thus the case had not reached the stage at which it can be fairly said that the juvenile's liberty had been placed in jeopardy.

The District Court relied on some early state cases which held that, once a plea of guilty is accepted by a court of competent jurisdiction, jeopardy immediately attached.[7] But those cases throw little light on the issue before us.[8] They are traditional criminal proceedings, which are essentially accusatory, adversary and punitive. Consequently, they involve considerations which are not relevant to the non-criminal *parens patriae* proceedings of the Juvenile Court. Since the Juvenile Court apparently adhered to the protective philosophy of the statute in this case, it is not necessary to consider whether a departure in practice from that philosophy would require the application of procedural safeguards observed in criminal proceedings.[9]

■ We think that the "full investigation" which § 11–914 requires before the Juvenile Court can waive jurisdiction includes informal hearings as provided for in § 11–915. Consequently, it was not improper for the Juvenile Court to conduct a hearing before determining whether or not to waive jurisdiction. To hold that jeopardy attached at that point would preclude the full and informal investigation in the interests of the minor and the community which Congress

6. There is a suggestion in appellee's brief (footnote 45) to the effect that certain witnesses may have a different version of the facts than those contained in the judge's affidavit. There is no intimation, however, as to what the differences may be; and, at any rate, they not being of record, we are not at liberty to speculate.

7. Belter v. State, 1922, 178 Wis. 57, 189 N.W. 270; Boswell v. State, 1887, 111 Ind. 47, 11 N.E. 788.

8. The District Court also relied on a statement appearing in the Supreme Court's opinion in Kercheval v. United States, 1926, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, that "A plea of guilty * * * is itself a conviction * * *. [T]he court has nothing to do but give judgment and sentence." But the Court was not considering a claim of double jeopardy; the question before the Court was whether, in a trial on a plea of not guilty, evidence of a guilty plea which had been withdrawn was admissible. Somewhat more relevant is the recent Supreme Court decision in Pollard v. United States, 1956, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393. There the defendant pleaded guilty in open court. When he susbequently appeared for sentencing, the trial judge, instead of pronouncing sentence, spoke to the defendant about the latter's attempts to overcome habitual drunkenness, wished him good luck and then turned to other business. Later that morning after the defendant had left the courtroom, the judge, upon request of the prosecutor, ordered that the defendant serve three years probation. Two years later the defendant violated the conditions of his probation, was arrested and brought before the court. Realizing that the sentence of probation was invalid because the defendant was not present when it was rendered, the court decided to sentence the defendant "in the first instance" to two years imprisonment. This sentence the defendant attacked on habeas corpus, alleging, *inter alia,* double jeopardy. Rejecting this contention, the Supreme Court said that double jeopardy could not have attached unless the trial court affirmatively determined at the original hearing that the defendant should not be subject to imprisonment or probation on his plea of guilty. Id. at page 359, 77 S.Ct. page 484.

9. Even if we were to accept the analogy between criminal and juvenile proceedings, it is clear under the cases relied upon by the District Court that the plea of guilty is not effective to impose jeopardy until accepted by the court. Here the record and affidavit of the judge indicate that he neither accepted nor refused the minor's admission that he was involved. By subsequently waiving jurisdiction, he implicitly rejected the plea.

thought necessary to achieve the salutary remedial purposes of a juvenile court system.

Reversed and remanded for further proceedings not inconsistent with this opinion.