Charles Lee TRIMBLE, Petitioner,

v.

William J. STONE, Superintendent of the Receiving Home for Children, Respondent.

No. 198–60.

United States District Court District of Columbia.

Sept. 30, 1960.

Joseph Levin, Washington, D. C., for petitioner.

Chester H. Gray, Corp. Counsel, Una Rita Quenstedt and William W. Pavis, Asst. Corp. Counsel, Washington, D. C., for respondent.

HOLTZOFF, District Judge.

The question presented in this case is whether the constitutional right to bail accorded to persons awaiting trial, is applicable to a juvenile pending disposition of charges in the Juvenile Court of the District of Columbia. The matter comes before this court on a petition for a writ of *habeas corpus* by a juvenile held in the Receiving Home for Children,

which constitutes the house of detention for minors awaiting disposition of their cases by the Juvenile Court. The respondent is the Superintendent of this institution. The petitioner requests that he be admitted to bail during the pendency of charges against him in the Juvenile Court.

The pertinent facts are as follows. Charles Lee Trimble, the petitioner, who is fifteen years old, was taken into custody by the police on September 11, 1960. He was immediately incarcerated in the Receiving Home which, as stated above, constitutes the house of detention for juveniles. Since his arrest he has been continuously confined in that institution. On September 12,—the morning after his arrest—, police officers filed a complaint against him with the Juvenile Court containing four charges of assault of a sexual nature on females on or about the streets of Washington. It was orally stated by counsel at the hearing before this Court, that the assaults were of a character that would have been prosecuted in the Municipal Court as simple assault, or as taking indecent liberties with a female, if the petitioner were not a juvenile. On the same day counsel for the petitioner appeared before the Juvenile Court and requested that the petitioner be admitted to bail. It appears from the transcript of the proceedings before the Juvenile Court that the Judge stated that "the policy of the court is to deny any request for bond where the juvenile is living within the territorial jurisdiction of the Juvenile Court". Accordingly the application was denied.

On September 15, the petitioner was brought before the Court and was represented by counsel. After hearing a member of his staff, the Court announced that a petition would be filed against the juvenile, an arraignment would take place, and the matter would then proceed either to trial or disposition; and that, in the meantime, the juvenile would be continued in custody. The Court set October 12,—over a month after the arrest—, as the date of the arraignment. It was understood that at the arraignment, if the juvenile did not admit his guilt, the case would be set for trial at a still later date. Counsel then requested that the petitioner be admitted to bond, contending that this was the constitutional right of the accused. The Juvenile Court held otherwise and ordered the petitioner to be remanded to custody.

It is entirely conceivable that several months may elapse between the date of the petitioner's arrest and the date of his trial, especially if he exercises his privilege of demanding a jury trial. If eventually he should be found not guilty, he will nevertheless have been incarcerated for a considerable period of time, although he is able and willing to give bail. It is a peculiar paradox that if the petitioner were over eighteen years of age, or if the Juvenile Court considered the case to be of sufficiently grave importance to warrant waiving jurisdiction to the District Court, the petitioner would be immediately entitled to admission to bail pending trial. Yet, because he is under eighteen and because the Juvenile Court does not deem the charges to be serious enough to justify transfer of the case to the District Court, the petitioner is denied this fundamental right and is being incarcerated for a period that may be prolonged to weeks and even months.

■ The right to bail before trial, except in capital cases, is guaranteed by the Bill of Rights. The Eighth Amendment to the Constitution of the United States, which is part of the Bill of Rights, provides that "excessive bail shall not be required". This clause has invariably been construed as guaranteeing the right to bail by necessary implication and not merely meaning that when allowed, bail shall not be excessive.

In Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3, Mr. Chief Justice Vinson wrote as follows on this general subject:

"From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a) (1), 18

U.S.C.A., federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See Hudson v. Parker, 1895, 156 U.S. 277, 285 [15 S.Ct. 450, 453, 39 L.Ed. 424]. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." (Emphasis original.)

■ The right to bail pending trial is absolute, except in capital cases, no matter how vicious the offense or how unsavory the past record of the defendant may be. This fundamental privilege is one of the outstanding features of the personal rights accorded in Anglo-American jurisprudence to those charged with infractions of the law. In this respect our traditional attitude differs from the practice prevailing in Roman law countries, where an absolute right to bail does not exist, and persons accused of crime may be confined for long periods of time awaiting trial. Such a practice would not be consonant with the Anglo-American principles of personal liberty.

■ It is argued in opposition to the petition that there is no provision for bail in the Juvenile Court Act for the District of Columbia, and that the pertinent statute, D.C.Code [1951 Ed.] 11-912, authorizes the Court either to release the juvenile in the custody of a parent, guardian, custodian, or probation officer; or else to cause him to be detained in such place of detention as shall be provided by the Bureau of Public Welfare. True, the Juvenile Court Act is silent on the subject of bail. The higher law of the Constitution, however, prevails. The Eighth Amendment is self-executing and no statute is necessary to implement it. It should be noted that there is no provision in the statute denying the right to bail. The Act is merely silent on this subject. A serious Constitutional question would arise if the statute expressly or by necessary implication denied the right to bail.

It is clear, therefore, that this issue cannot be determined by a construction of the Juvenile Court Act. The problem must be solved solely on the basis of the Constitution, namely, whether the constitutional right to bail applies in this instance. If it does, this privilege must be accorded to this petitioner. If it does not, the enquiry of this Court is at an end. This Court has neither the power nor any reason to review the manner in which the judge of the Juvenile Court exercised his discretion. The question is whether such discretionary authority exists, or whether the petitioner is entitled to bail as of right by virtue of the constitutional provision, and not whether the Juvenile Court acted wisely.

It is urged in opposition to the petition that the right to bail does not apply in Juvenile Court proceedings on the theory that they are civil and not criminal proceedings. That these proceedings are to be deemed technically as civil proceedings, is undoubtedly correct, for it has been so held by the Court of Appeals for this Circuit.[1] The fact that the proceedings are to be classified as civil instead of criminal, does not, however, necessarily lead to the conclusion that constitutional safeguards do not apply. It is often dangerous to carry any proposition to its logical extreme. These proceedings have many ramifications which cannot be disposed of by denominating the proceedings as civil. Basic human rights do not depend on nomenclature. What if the jurisdiction of the Juvenile Court were to be extended by an Act of Congress to the age of twenty-one or even twenty-five, or what if it were to be reduced to sixteen? Could it be properly said that the constitution-

1. Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556, 559; Thomas v. United States, 74 App.D.C. 167, 169, 121 F.2d 905.

al safeguards would be increased or diminished accordingly?

Manifestly the Bill of Rights applies to every individual within the territorial jurisdiction of the United States, irrespective of age. The Constitution contains no age limits.

█ A proceeding in the Juvenile Court may terminate in deprivation of liberty for the period of the child's minority, in this case as much as six years. It is urged that a commitment by the Juvenile Court to the National Training School for Boys, which is in effect a reform school for boys, does not involve punishment but merely treatment, while if a person over eighteen, or a juvenile over whom jurisdiction is waived by the Juvenile Court, is committed to a reformatory or a penitentiary, such action is punishment and not treatment. This distinction is not realistic. To say that a boy who is sent to a training school or a reform school by the Government in a paternalistic spirit, is not being punished, while a person who is committed to a reformatory or penitentiary is there for punishment, does not bear the aspect of reality. All incarceration consequent on an infraction of the law combines deterrence, punishment, and treatment for rehabilitation in varying degrees. In some instances emphasis on one element is greater than on others, but in every case each is present to some extent. For instance, the Federal Youth Corrections Act, 18 U.S.C. § 5010, which is applicable to youth offenders up to the age of twenty-five, expressly provides for commitment to the custody of the Attorney General "for treatment and supervision". The use of the word "treatment" in that statute does not derogate from the rights of the accused to all of the safeguards of the Bill of Rights, including, of course, the right to bail. The ultimate test is not whether the proceedings are denominated criminal or civil, but what their outcome may be. If as a result of an infraction of law, the proceedings may result in depriving a person of his liberty, the protection of the Bill of Rights is applicable. The artificiality of distinction sought to be drawn by respondent's counsel may be graphically demonstrated by the fact that a young man committed for his minority to the National Training School for Boys may eventually find himself transferred to a Federal reformatory and confined cheek by jowl with another young man or boy serving a sentence imposed by a United States District Court.[2]

It has been frequently held that various, specific provisions of the Bill of Rights are applicable to proceedings against juveniles in the Juvenile Court. This is true of the right of counsel[3] and the prohibition against double jeopardy.[4] No doubt the privilege against self-incrimination and the right to a speedy trial are to be accorded to juveniles. No reason appears for making an exception as to the right to bail.

2. At one time it was held that inmates of the National Training School for Boys were not subject to transfer to a reformatory, Huff v. O'Bryant, 74 App.D.C. 19, 121 F.2d 890. In order to abrogate the ruling made in this case, the Congress, at the request of the Department of Justice, promptly passed an Act expressly permitting such transfers, Act of October 21, 1941, 55 Stat. 743, and reading, in part, as follows:
"The authority conferred upon the Attorney General by this section [i.e. section permitting transfers of inmates of one penitentiary or correctional institution to another] shall extend to persons committed to the National Training School for Boys, by the juvenile court of the District of Columbia, as well as to those committed by any court of the United States."
With a minor change of phraseology, this provision is now found in 18 U.S.C. § 4082, and consequently such transfers are permissible, Clay v. Reid, D.C., 173 F.Supp. 667.

3. In re Poff, D.C., 135 F.Supp. 224; Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686.

4. United States v. Dickerson, D.C., 168 F.Supp. 899, reversed on another ground, 106 U.S.App.D.C. 221, 271 F.2d 487.

There are instances of Congressional and Executive construction of the Bill of Rights as being applicable to all persons including juveniles. The Federal Juvenile Delinquency Act, which is applicable to all Federal courts, except the United States District Court for the District of Columbia, contains a provision that a juvenile "shall be proceeded against as a juvenile delinquent *if he consents to such procedure,* unless the Attorney General, in his discretion, has expressly directed otherwise" [5] (Emphasis supplied). The provision requiring the consent of an alleged juvenile delinquent to juvenile procedure implies a recognition on the part of Congress that all of the provisions of the Bill of Rights, such as those relating to prosecution by indictment, trial by jury, and the others heretofore discussed, are applicable to juveniles and that informal procedure may not be invoked except with the consent of the juvenile.

That Congress had this point specifically in mind appears from the Committee Reports concerning this legislation (S.Rep. No. 1989, 75th Cong. 3d Sess., June 6, 1938; and H. Rep. No. 2617, 75th Cong. 3d Sess., June 7, 1938). Each of the two reports quoted from a letter of Attorney General Cummings which in recommending the enactment of the measure stated that "the consent of the juvenile * * * is to be required to a prosecution for juvenile delinquency under the Act. * * * It has been held that a minor may waive the constitutional right to a trial by jury in the same manner as adults." This was a clear assertion on the part of the Attorney General that a minor is entitled to all the safeguards of the Bill of Rights, unless he independently waives them, as well as a realization of this problem on the part of the Congress. Executive and Congressional construction of the Constitution are entitled to considerable weight.

Views similar to the conclusion here reached by this Court, have been ex-pressed by a number of State tribunals. Thus in the case of In re Contreras, 109 Cal.App.2d 787, 241 P.2d 631, 633, it was said:

> "True, the design of the Juvenile Court Act is intended to be salutary, an every effort should be made to further its legitimate purpose, but never should it be made an instrument for the denial to a minor of a constitutional right or of a guarantee afforded by law to an adult.
>
> \* \* \* \* \* \*
>
> "Surely, a minor charged in the juvenile court with acts denounced by law as a felony does not have lesser constitutional statutory rights or guaranties than are afforded an adult under similar circumstances in the superior court."

In Ex parte Osborne, 127 Tex.Cr.R. 136, 75 S.W.2d 265, the Court of Criminal Appeals of Texas held that the State Constitutional provision concerning the right to bail was applicable to a person tried in a juvenile court as a delinquent child.

In State v. Franklin, 202 La. 439, 12 So.2d 211, 213, the Supreme Court of Louisiana held that the constitutional right to bail applied to juveniles. In the course of its opinion, the Court stated:

> "Under the provisions of Article VII, Section 96, of the Constitution of 1921, the Legislature had the authority to fix the jurisdiction of the Juvenile Court for the Parish of Orleans and the manner of procedure therein. However, this provision of the Constitution does not contain any language indicating that it was ever the intention of the framers of the Constitution to abrogate the constitutional right to bail pending trial.
>
> \* \* \* \* \* \*
>
> "Moreover, tribunals of this nature were established with the view of showing more consideration to the juvenile and were not designed

---

5. 18 U.S.C. § 5032.

to deprive him of any of his constitutional rights. A finding of delinquency usually demonstrates the necessity for making a change in the custody of the child, but prior to such finding, he is entitled to his constitutional right to bail."

It was the beneficent purpose of the progressive legislation creating juvenile courts to ameliorate some of the rigidity and formality of the criminal law in cases in which the accused is a juvenile. The objective was to introduce more leniency, humanity, and informality in dealing with juvenile offenders. The ultimate end was to confer new rights and privileges on juvenile offenders beyond those to which they had been previously entitled, as well as in addition to those possessed by adult offenders. It is inconceivable that it was the intention to deprive juveniles of rights that they would have had if they were treated on the same basis as adult defendants.

The Court recognizes that it may be desirable in the interest of the public, or even in the interest of the individual, in some instances to confine the accused while awaiting final disposition of his case, instead of permitting him to be liberated on bail. These considerations are as applicable to some adult offenders as to juveniles. Yet the Constitution forbids this result. It is far more important to preserve the basic safeguards of the Bill of Rights, which were developed as a result of centuries of experience, than it is to sacrifice any one of them in order to achieve a desirable result in an individual case no matter how beneficial it may seem to be for the moment. Immediate myopic vision must not be permitted to interfere with a long range view of the protection of personal liberty.

The Court concludes that the right to bail exists in cases pending in the Juvenile Court and that hence the petitioner should be admitted to bail until the outcome of the proceeding against him in the Juvenile Court.

The petition is granted and a writ of *habeas corpus* will issue and will be sustained. An order will be made admitting the petitioner to bail pending final disposition of the case in the Juvenile Court, the amount of the bond to be fixed after hearing counsel on the terms of the order.

Submit order.