**Wallace R. FULWOOD, Appellant,**

v.

**William STONE, Appellee.**

**No. 21401.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 16, 1967.

Filed Nov. 28, 1967.

---

Mr. Richard P. Duane, of the bar of the Supreme Court of California, *pro hac vice*, by special leave of court, with whom Mrs. Florence Roisman, Washington, D. C., was on the motion, for appellant.

Mr. David P. Sutton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the opposition to the motion, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

### ORDER

PER CURIAM.

This cause came on for consideration on appellant's motion for summary reversal, and the Court heard argument of counsel. Upon consideration whereof, it is

Ordered by the Court that the judgment of the District Court appealed from

herein be vacated, and this case is remanded to the District Court for further proceedings consistent with the attached opinion of the Court filed this date.

BAZELON, Chief Judge.

Our sixteen year old appellant in this habeas corpus proceeding is presently confined in the District of Columbia Receiving Home for Children. He was committed to the Home by the Juvenile Court at an "initial hearing" pending trial on charges of robbery and assault.

At this hearing, a probation officer who had previously supervised appellant[1] testified that his "adjustment in the community has only been marginal":

> His lawyer and I both attempted to get him work and as of these dates, July 30th to September 9th, he only worked twenty hours in the National Park Service. He has not kept his appointments with me on a regular basis, and with these things plus his involvements on the complaints leads me to believe that his adjustment is not satisfactory.

Appellant's attorney stated that appellant was to return to his former job as a gas station attendant the next day, and that appellant has a "good home" and a "mother that cares quite strongly for him."

Following the judge's announcement that he was going to "place [appellant] * * * in the Receiving Home pending trial," appellant's attorney requested "release on some sort of bail," to which the court responded:

> THE COURT: No. Who is going to put it up? Are you going to put up surety against his actions? If you will draw me a contract or your agency will draw me a contract assuring me that anyone who is harmed or anything is damaged by this boy that they

will pay all the damages, I would consider it.

> MRS. FULWOOD [Appellant's mother]: Could I say something? On this assault case I talked with the boy myself and he tells me. * * *

> THE COURT: Mrs. Fulwood, I'm sorry, but that is something we will have to have a trial on. Now, if Mr. Duane can persuade the authorities that this is a false charge and that it should be dropped, then there is nothing to try, but the police officers say that twice he robbed people. He says that he didn't. I am not making any judgment on that until there is a trial, and so far as his present status as to whether he should be continued in the community or kept in custody until that trial, I am making the decision that he should be kept in custody until that trial, and if what he says is true, we will talk very seriously about seeing what we can do to get him a job and return him to probation.

On October 5, the juvenile's attorney filed an appeal in the District of Columbia Court of Appeals. But he apparently abandoned it immediately[2] because the next day he filed this petition for writ of habeas corpus in the United States District Court. The petition alleged that the Juvenile Court judge had abused his discretion under the Juvenile Court Act, that he had erred in not releasing appellant on his personal recognizance under the Bail Reform Act of 1966,[3] and that appellant had been denied his rights under the 5th and 8th Amendments to the United States Constitution. The District Court, being of the view that "a child accused of a delinquent act has an absolute constitutional right to bail," issued the writ and ordered the juvenile released on $3,500 bond. He was unable to furnish a bond in that amount, and moved the District Court for release on

---

1. At the hearing the court continued appellant's probation on one prior charge, and dismissed another, before considering the charges for which he is presently detained.

2. Appellant's motion for reconsideration was denied by the Juvenile Court on October 10.

3. Pub.L. 89–465, 80 Stat. 214, 18 U.S.C. §§ 3146 *et seq.*

personal recognizance or $500 secured appearance bond. This motion was denied, and the juvenile was granted leave to bring this appeal *in forma pauperis.*

## I.

Since the juvenile failed to pursue his statutory right of appeal to the District of Columbia Court of Appeals,[4] we consider first whether the District Court erred in entertaining this habeas corpus action. We are constrained by the circumstances of this case to hold that it did not. The government virtually acquiesced in the District Court's consideration of the petition[5] and made no objection in this court.[6] Having in mind the statutory command for a sensitive consideration of the juvenile's needs,[7] we think any further delay could not be justified.

■ We do not construe Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1952), to bar habeas corpus in these circumstances. The rule requiring exhaustion of appellate remedies is not an absolute limitation on the court's power to act.[8] And given the historic concern of the courts with the welfare of minors,[9] and the rehabilitative goals of juvenile court proceedings, any court is properly reluctant to penalize a juvenile for procedural defaults, especially those of his attorney.[10]

■ In reaching this result, we wish to make as plain as we possibly can that we do not condone the failure to pursue the statutory right of appeal to the District of Columbia Court of Appeals. Review of pretrial detention orders of the Juvenile Court is ordinarily to be sought by that route, provided, of course, that the need for a habeas corpus remedy is obviated by the availability of an *adequate* appellate remedy in the District of Columbia Court of Appeals which, the Supreme Court has said, "must be speedy

4. D.C.Code, § 11–741(a).

5. Although the government argued that Trimble v. Stone, 187 F.Supp. 483 (D.D.C.1960), was not "controlling," because it was decided by another District Judge, counsel for the government conceded that "the District Court does have power as part of its habeas corpus proceedings to set bail as it wishes." Tr. p. 26.

6. See Cameron v. Mullen, D.C.Cir., 387 F. 2d 193, 196 n. 3 (March 2, 1967).

7. See sections II, III of this opinion.

8. It is clear that "the rule is not one defining power but one which relates to the appropriate exercise of power," and that it is "not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Bowen v. Johnston, 306 U.S. 19, 27, 59 S. Ct. 442, 446, 83 L.Ed. 455 (1939); Sunal v. Large, 332 U.S. 174, 178–180, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).
Most frequently, of course, the rule is applied to bar intervention by a federal court when available state remedies have not been pursued, a situation in which considerations of comity and federalism play a major role. See, e.g., Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Even in such cases, the rule has not been regarded as

"jurisdictional." Ex parte Royall, 117 U.S. 254, 6 S.Ct. 742, 29 L.Ed. 872 (1886); Fay v. Noia, 372 U.S. 391, 417–420, 425, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

9. Courts have long exercised power, in habeas corpus proceedings, to determine the proper custody of a minor. See, e. g., Beall v. Bibb, 19 App.D.C. 311, 81 F. 2d 256 (1902); Matthews v. Matthews, 80 F.Supp. 560 (D.D.C.1939). And though the nominal parties to such a proceeding are the parents or other persons seeking custody, the most important consideration is the welfare of the child. Sardo v. Villapiano, 65 App.D.C. 121, 122, 81 F.2d 255, 256 (1935); Beall v. Bibb, *supra.*

10. A number of decisions in this jurisdiction reflect an underlying assumption that the requirement of exhaustion of appellate remedies is less stringently to be applied to juveniles than to adults. McDaniel v. Shea, 108 U.S.App.D.C. 15, 278 F.2d 460 (1960); Young v. Hesse, 58 App.D.C. 362, 30 F.2d 986 (1929); Trimble v. Stone, 187 F.Supp. 483 (D. D.C.1960); see Creek v. Stone, 126 U.S. App.D.C. 327, 379 F.2d 106 (1967); see also, White v. Reid, 125 F.Supp. 647 (D. D.C.1954); Kautter v. Reid, 183 F.Supp. 352 (D.D.C.1960).

if it is to be effective." Stack v. Boyle, *supra*, 342 U.S. at 4, 72 S.Ct. at 3.[11]

## II.

█ We find it unnecessary to reach the question whether there is a "constitutional right to bail" in juvenile proceedings, since we believe an adequate substitute for bail is provided by the Juvenile Court Act itself. D.C.Code, § 16–2306 provides:

(a) When an officer takes a child into custody, he shall, unless it is impracticable or has been otherwise ordered by the court, accept the written promise of the parent, guardian, or custodian to bring the child to the court at the time fixed. Thereupon, the child may be released in the custody of a parent, guardian, or custodian. If not so released, the child shall be placed in the custody of a probation officer or other person designated by the court, or taken immediately to the court or to a place of detention provided by the Board of Commissioners of the District of Columbia or its authorized representative, and the officer taking him shall immediately notify the court and shall file a petition when directed to do so by the court.

(b) A child whose custody has been assumed by the court may, pending final disposition of the case, be released by the court in the custody of a parent, guardian, or custodian, or of a probation officer or other person appointed by the court, to be brought before the court at the time designated. When not released as herein

provided, the child, pending the hearing of the case, shall be detained in a place of detention provided by the Board of Commissioners of the District of Columbia or its authorized representative, subject to further order of the court.

Congress has established the following principles to guide the Juvenile Court's disposition of all juveniles coming under its jurisdiction:

(1) the child shall receive such care and guidance, preferably in his own home, as will serve his welfare and the best interests of the District; and

(2) the child's family ties shall be conserved and strengthened whenever possible, and, except when his welfare or the safety and protection of the public cannot be adequately safeguarded without his removal, he may not be removed from the custody of his parent; and

(3) when the child is removed from his own family, the court shall secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given him by his parents. D.C.Code, § 16–2316.

These principles are applicable prior to trial as well as on final disposition.[12] If faithfully observed in practice, we think they are more than an adequate substitute for bail.[13]

## III.

█ Essentially the question here is whether there has been such observance.[14] We have recognized that the Juvenile Court, "When presented with a

11. We note, however, that the Rules of the District of Columbia Court of Appeals do not appear to contain any provision for extraordinary expedition of appeals from pretrial detention orders comparable to Rule 33(e) of the General Rules of this court.

12. Creek v. Stone, 126 U.S.App.D.C. 327, 379 F.2d 106 (1967).

13. Money bail might be anomalous in juvenile proceedings, since the juvenile's right to pretrial release would depend on the economic position of his parents

rather than considerations relevant to the goals of the Juvenile Court Act. *Cf.* Black v. United States, 122 U.S.App.D.C. 393, 395 n. 5, 355 F.2d 104, 106 n. 5 (1965); Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 375, 236 F.2d 666, 670 (1956).

14. If there were neither a right to bail nor faithful adherence to the philosophy of the Juvenile Court Act, the juvenile would receive the "worst of all possible worlds." Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

substantial complaint," has a duty to make "an appropriate inquiry to insure that the statutory criteria, as applied to that juvenile, are being met." In re Elmore, 127 U.S.App.D.C. 176, 382 F.2d 125 (May 23, 1967); Creek v. Stone, 126 U.S.App.D.C. 327, 379 F.2d 106 (1967). It does not affirmatively appear on the record before us that such an "appropriate inquiry" concerning pretrial custody was made by the Juvenile Court.

■■ Even when removal from the family is deemed necessary it does not follow that the juvenile is automatically to be committed to the Receiving Home. Rather, the court is to secure for the juvenile "custody, care, and discipline as nearly as possible equivalent to that which should have been given him by his parents." § 16–2316. There are some indications in the record that the court may have thought that its only choices were continuation of appellant's probation, or commitment to the Receiving Home.[15] The choices are not so limited. The Juvenile Court has a duty to fashion an appropriate disposition notwithstanding any failure by the juvenile's representatives to make specific proposals [16] —though such failure is not condoned.

■ In declining to consider whether there is a constitutional right to bail in juvenile proceedings, we have stated that the Juvenile Court Act provides an adequate substitute for bail. We wish to make clear, however, that the words of the statute are not enough to remove constitutional considerations. Our task is to make certain that the statutory words are not mere promises to the ear which are broken to the hope. To ensure rigorous application of the statutory criteria in this case, we think the matter of pretrial detention should be reconsidered by the Juvenile Court. We therefore vacate the judgment of the District Court and remand with instructions to order appellant released unless within ten days the Juvenile Court shall conduct a further inquiry consistent with this opinion.

The judgment of the District Court is vacated and the case remanded.

---

15. Since the Receiving Home is hardly "equivalent to" the ordinary home environment, REPORT OF THE PRESIDENT'S COMMISSION IN THE DISTRICT OF COLUMBIA 665–676 (1966), it should only be a last resort where no suitable alternative exists.

16. Congress has provided the Juvenile Court with a Director of Social Work, a Supervisor of Probation, and other employees, to enable it to explore and make provision for the needs of juveniles coming under its jurisdiction. See D.C.Code, §§ 11–1523, 11–1524, 11–1525, 16–2302.